CALOGERO, Chief Justice.
11Today we reaffirm our jurisprudence applying La.Code Civ. Proc. art. 1153 to the amendment of a timely filed petition, an amendment that adds a major child’s wrongful death action arising from the death of her father, to find that the amendment relates back to the date of filing of the original petition for wrongful death and survival actions by the wife and another major child of the decedent against the defendant health care providers. See Giroir v. South La. Med. Ctr., Div. of Hospitals, 475 So.2d 1040 (La. 1985). Accordingly, for the reasons set forth below, we hold that the amendment adding the wrongful death action of Sarah Warren Jimenez relates back to the timely filing of the original petition filed by Sarah’s mother, Pamela Warren, and her sister, Theresa Rene Warren. We further find that Sarah was entitled to the benefit of the interruption of prescription on the survival action such that the amending petition adding her as a plaintiff to that cause of action was timely filed. See Williams v. Sewerage & Water Bd. of New Orleans, 611 So.2d 1383 (La.1993). Therefore, the district court correctly denied Rthe defendants’ exception of prescription with regard to the amending petition adding Sarah’s claims.
This case arises from the death of Terry Warren. He died on October 13, 2000, at Summit Hospital from complications of congestive heart failure and/or an acute myocardial infarction. On September 11, 2001, Pamela Warren, Mr. Warren’s widow, and Theresa Warren, one of Mr. Warren’s daughters, filed a request for a medical review panel to investigate their medical malpractice complaint against various health care providers, including Mr. Warren’s treating physicians. The medical review panel issued its opinion on August 27, 2002. Pamela and Theresa then filed a petition on November 25, 2002, in the district court asserting survival and wrongful death actions under La. Civ.Code arts. 2315.1 and 2315.2. On July 6, 2004, plaintiffs Pamela and Theresa filed a First Supplemental and Amending Petition. This petition added survival and wrongful death causes of action for Sarah Warren Jimenez, the decedent’s second daughter.
In response to the amended petition, the defendants filed an exception of prescription, arguing that Sarah’s claims are prescribed on their face because she did not file her action within one year of the date of her father’s death. The defendants pointed out that Sarah testified in deposition that she was aware of the filing of the *188 medical review complaint as well as the filing of the instant lawsuit by her mother and sister but chose, at that time, not to participate.[1] Under these facts, the defendants argued that Sarah’s claims do not relate back to the original claims pursuant to Giroir. In addition, the defendants claimed they were severely prejudiced by the addition of another plaintiff in July 2004, nearly three years after |athe request for a medical review panel was made in September 2001, and nineteen months after the lawsuit was filed in November 2002.
The plaintiffs opposed the exception. In support, the plaintiffs urged the trial court to apply Tureaud v. Acadiana Nursing Home, 96-1262 (La.App. 3 Cir. 5/7/97), 696 So.2d 15, and Phillips v. Francis, 01-1105 (La.App. 3 Cir. 2/6/02), 817 So.2d 107. According to the plaintiffs, Tureaud and Phillips stand for the proposition that if proper party plaintiffs file their claim timely, that suit will interrupt prescription as to any other plaintiffs that have similar claims.
After a hearing, the district court overruled the defendants’ exception of prescription. From this ruling, the defendants sought supervisory review. A five-judge panel of the court of appeal denied the writ, citing La.Code Civ. Proc. art. 1153 and Giroir. Upon application by the defendants, this court remanded the case to the court of appeal for briefing, argument and opinion. Warren v. Louisiana Medical Mutual Insurance Company, 06—1547 (La.9/29/06), 938 So.2d 693.
On remand, a majority of the five-judge panel of the court of appeal again denied the writ application in an unpublished written decision, relying on the four guidelines identified by this court in Giroir. We again granted the defendants’ writ application to consider the propriety of the court of appeal’s ruling as well as the application of La.Code Civ. Proc. art. 1153 and Giroir to the facts of this case. Warren v. Louisiana Medical Mutual Insurance Company, 07—0492 (La.4/27/07), 955 So.2d 670.
DISCUSSION
We first turn to the survival action that Sarah seeks to join in as an additional plaintiff. A survival action, which compensates for the damages suffered by the victim from the time of injury to the moment of his death, and a wrongful death action, which compensates the beneficiaries for their own injuries which they |4suffer from the moment of the victim’s death and thereafter, are separate causes of action. See Walls v. American Optical Corp., 98—0455 p. 14, (La.9/8/99), 740 So.2d 1262, 1273; Taylor v. Giddens, 618 So.2d 834, 840 (La.1993). With regard to Sarah’s addition as a plaintiff in the survival action, she shares in that cause of action with her sister and mother; therefore, prescription on that cause of action was interrupted when Sarah’s sister and mother timely filed suit against the defendants. “ ‘When several parties share a single cause of action ..., suit by one interrupts prescription as to all.’ ” Williams v. Sewerage & Water Bd. of New Orleans, 611 So.2d 1383, 1390 (La.1993), quoting Louviere v. Shell Oil Co., 440 So.2d 93, 96 (La. 1983). “ ‘[A]ll prescriptions affecting that cause of action are interrupted by the suit and remain continuously interrupted as *189 long as the suit is pending.’ ” Id., quoting Louviere, 440 So.2d at 98. Therefore, Sarah, like her mother and sister, was also entitled to the benefit of interruption of prescription on her survival claim against the defendants. The district court thus properly overruled the defendants’ exception of prescription with regard to the amending petition adding Sarah as a plaintiff in the survival action.
We next turn to the issue of Sarah’s wrongful death claim and whether the amending petition adding this claim relates back under La.Code Civ. Proc. art. 1153 to the date of the timely filing of her mother’s and sister’s survival and wrongful death claims. The analysis with regard to this cause of action begins with La.Code Civ. Proc. art. 1153. That article provides:
When the action or defense asserted in the amended petition or answer arises out of the conduct, transaction, or occurrence set forth in the original pleading, the amendment relates back to the date of filing the original petition.
In Giroir, this court examined the jurisprudence applying Federal Rule of Civil Procedure 15(c), upon which La.Code Civ. Proc. art. 1153 is based, and ^concluded that “[a]lthough the [federal] Rule refers to ‘an amendment changing the party’ it has properly been held to sanction relation back of amendments which add or drop parties, as well as those substituting new parties for those earlier joined.” 475 So.2d at 1043 (collecting authorities). While acknowledging the “less difficult” legal analysis for the relation back of amendments involving a change of capacity, this court nonetheless set forth factors to consider for the relation back of an amendment adding or changing plaintiffs. Id. at 1044. Relying on our prior case in Ray v. Alexandria Mall, 434 So.2d 1083 (La.1983), regarding amended petitions adding or substituting defendants, we set forth these factors in Giroir: “[a]n amendment adding or substituting a plaintiff should be allowed to relate back if (1) the amended claim arises out of the same conduct, transaction, or occurrence set forth in the original pleading; (2) the defendant either knew or should have known of the existence and involvement of the new plaintiff; (3) the new and the old plaintiffs are sufficiently related so that the added or substituted party is not wholly new or unrelated; (4) the defendant will not be prejudiced in preparing and conducting his defense.” Giroir, 475 So.2d at 1044.
In Giroir, the husband of the decedent filed suit against the defendants seeking survival damages as administrator of his wife’s estate and wrongful death damages sustained by him. Ten days later, but after the prescriptive period had run, the husband sought to add the decedent’s two major children in both the survival and wrongful death actions. The amending petition also sought to change the husband’s capacity so that he appeared as an individual rather than as the administrator of his wife’s estate. We found that these amending petitions adding the wrongful death claims of the major children related back to the filing of the husband’s original petition. With regard to the major children’s wrongful death and survival actions, we reasoned in pertinent part that the defendants knew orJfiShould have known of the existence and involvement of the children, because (1) the facts in the original petition gave the defendants notice of, and did not negative, the reasonable possibility that a surviving child of a deceased fifty-five year-old married woman would be entitled to recover as a survivor or wrongful death beneficiary and might later assert a claim, and (2) the defendants had received actual notice that the decedent had children through the recorded visits of her family members, the recorded assistance *190 of her daughter in transporting her, and the recorded psychiatric report evidencing her concern for her grandchildren. Additionally, the court reasoned that the defendants had not been prejudiced in preparing and conducting their defense, not only because the added actions arose out of the same transaction or occurrence and because they knew of and had record of the existence of the children, but also because the timing of the amendment was well before trial and the defendants thus had had ample time to prepare for trial. We reasoned that the defendants in Giroir had failed to show that they were in any way hurt or impaired in their ability to investigate, preserve evidence, and prepare defenses on both the liability and quantum issues.
Giroir has since been applied in various situations in the courts of appeal, with some courts finding that the added claims of a new plaintiff did relate back to the filing of the original petition and other courts finding to the contrary. The lower courts have not encountered problems in applying these precepts; consequently, we discern no need to reconsider Giroir today. However, we point out that the enumerated Giroir factors are guidelines to be considered under the totality of the circumstances before an amendment adding a new plaintiff will be deemed to relate back pursuant to La.Code Civ. Proc. art. 1153.
Considering the Giroir factors in this case, we agree with the court of appeal that the amending petition adding Sarah’s wrongful death claim satisfied the first 17guideline, because Sarah’s claim arose out of the same conduct, transaction or occurrence set forth in the original petition — i.e., the alleged malpractice by the defendants that allegedly resulted in Mr. Warren’s death. Likewise, the amending petition satisfies the third factor, because Sarah is sufficiently related to the original plaintiffs, her mother and sister. Indeed the parties agree that the amended claims of Sarah arise out of the same transaction or occurrence and that Sarah is not a wholly new or unrelated party. Therefore, the dispute in this case, as the court of appeal found, centers on the second and fourth factors identified in Giroir.
The defendants argue to this court that the plaintiffs did not satisfy their burden for relation-back of the amended claim under the Giroir criteria.[2] With regard to the second prong, they assert they had no actual knowledge of the existence of Sarah because she was not named in the medical review panel complaint. The only suggestion that Mr. Warren had other children was in the petition, which indicated that the initial plaintiff, Theresa Warren, was “one of the surviving children.” [emphasis added]. The defendants maintain Sarah was not by name identified as a daughter of the decedent until she was listed as a witness in the plaintiffs’ answers to interrogatories on March 5, 2003. Relying on Musgrove v. Glenwood Regional Medical Center, 37-575 (La.App. 2 Cir. 9/26/03), 855 So.2d 984, the defendants claim they were not provided with enough information to reasonably establish that Sarah would in fact file a claim over three and a half years after the date of the alleged malpractice. In addition, the defendants point out, Theresa testified in June 2004 that Sarah *191 was aware of the litigation but had no | ^interest in pursuing a claim; thus, merely identifying Sarah as a witness, the defendants argue, did not give them adequate notice of her claim.
Moreover, the defendants argue that the court of appeal’s position, that the defendants’ knowledge of the mere “possibility” of Sarah’s claim, conflicts with a prior decision of the First Circuit in Duffie v. Southern Pacific Transportation Company, 563 So.2d 933 (La.App. 1st Cir.1990). In Duffie, the First Circuit concluded that it did “not believe that defendant must remain alert indefinitely to the possibility that a plaintiff might have a spouse or children, or both, who might at some future date bring a claim.”
The defendants also assert that Sarah’s claim is a separate cause of action from the claims asserted by her mother and sister. The defendants point out that Sarah’s loss of consortium claims are distinguishable from those of her mother and sister in that she was a major at the time of her father’s death and estranged from her family. The defendants note that there are significant factual differences between the two daughters’ relationships with their father, resulting in two potentially different loss of consortium claims. Although Sarah and Theresa are sisters and belong to the same category of plaintiffs, their wrongful death claims are not identical but distinct and separate, the defendants maintain.
Finally, the defendants argue that they are prejudiced by Sarah’s late arrival to the litigation. They point out that the plaintiffs did not address or justify the extensive time delay between the filing of the medical review panel complaint, the original petition, and the amended petition, in their opposition to this exception. The defendants assert almost four years have passed since the alleged malpractice and three years since the medical review complaint was filed. In addition, they point out that Sarah made an intentional decision not to file her petition during this “lengthy” period of time.
| sRelying on Giroir and La.Code Civ. Pro. art. 1153, the plaintiffs maintain that Sarah’s claim relates back to the timely filed original claims. The plaintiffs argue that the second Giroir factor was satisfied, because the defendants knew of Sarah’s existence and involvement in the case, and thus they knew or should have known that she might file a claim. In support, the plaintiffs note that Sarah’s name was listed as the informant on the death certificate and that the original petition was specifically crafted to note that Theresa was “one” of the decedent’s surviving adult children, the clear implication being that there were potentially more similarly-situated plaintiffs. This notice, the plaintiffs argue, allowed the defendants an opportunity to prepare a defense to the possible claim.
As to the fourth factor, the plaintiffs argue that Sarah’s wrongful death claim is identical to her mother’s and sister’s claims, and therefore, the defendants suffer no prejudice with the addition of Sarah’s claims. The plaintiffs contend the passage of time between the filing of the original claims and the addition of Sarah’s claim causes no prejudice to the defendants.
With regard to the second factor, we believe the “existence and involvement” of Sarah and her additional cause of action were sufficiently known or knowable to the defendants within the prescriptive period. The defendants were aware of the existence of Sarah Warren because she was named as the informant on the death certificate, and her address was provided thereon, and thus the defendants knew or should have known that she was a daugh *192 ter of the decedent.[3] Additionally, the petition clearly states that Theresa was but “one” of the decedent’s children; thus, the defendants were placed on notice that there existed | inother similarly-situated potential plaintiffs. As the court of appeal reasoned, although Sarah was not mentioned by name in the request for a medical review panel or in the petition for damages, paragraph five of the petition stated that Theresa was “one of the surviving children of Terry Warren”) and, in •that capacity, she was asserting both survival and wrongful death claims. Thus, the petition gave the defendants notice of, and did not negative, the reasonable possibility that another surviving child of Mr. Warren would be entitled to recover under La. Civ.Code arts. 2315.1 and 2315.2 and that she might later assert such claims. See Giroir, 475 So.2d at 1045. This information was certainly known or knowable by the defendants before the prescriptive period had run. And this information was confirmed when, in answers to interrogatories mailed to the defendants on March 5, 2003, approximately three and one-half months after the petition for damages was filed, Sarah was specifically identified as Terry Warren’s daughter and a potential witness in the case. Thus, the defendants have known of Sarah’s existence and involvement in the case, as an adult child of the decedent and a witness in the case, since the death of her father, and certainly since shortly after the filing of the original petition.
The defendants, and the dissenters in the court of appeal, make much of the fact that Sarah knew of the litigation but had chosen not to participate, and that it was only when she knew that she would be a witness in the case that she joined as a plaintiff asserting a share in the survival damages and her own wrongful death damages. Certainly, were we to consider the fact that Sarah knew of the litigation but did not want to get involved, Sarah would seem, at first glance, to not present a sympathetic portrait with regard to the prescription issue. Indeed, at least one state requires the plaintiffs to show that the delay in adding the party was not due to inexcusable neglect. See Stansfied v. Douglas County, 146 Wash.2d 116, 43 P.3d I,,498 (2002); Beal for Marinez v. City of Seattle, 134 Wash.2d 769, 954 P.2d 237 (1998). However, the Louisiana statute speaks only of adding a cause of action or defense, which has been interpreted to include the addition of a plaintiff or defendant, and the subjective intent of the added party in asserting his or her claim has not been cited as a consideration for finding or not finding a relation back to the original petition. Instead, the statute and jurisprudence focus on whether the defendant knew or should have known of the involvement of the added plaintiff, and we conclude that the defendants in this case reasonably had such knowledge. Moreover, the deposition testimony of Sarah and her sister Theresa reveals that the death of their father had put the family into emotional turmoil, thereby explaining Sarah’s reluctance to become involved in the litigation.
In addition to not adding a subjective element to the analysis, we also decline to read into the phrase “existence and involvement” a heightened degree of proba *193 bility of asserting a claim in the future. The defendants would have us add as additional consideration whether there was a reasonable probability, or a certainty, that the identified plaintiff would in fact assert her claim. However, we distinguish Musgrove v. Glenwood Regional Medical Center, 37,575 (La.App. 2 Cir. 9/26/03), 855 So.2d 984, on its facts. That case involved a claim by an emergency room physician who filed suit against a hospital for damages sustained as a result of wrongful termination. Three years later, his wife, who was employed by the hospital as a respiratory therapist, filed a claim for loss of consortium. In finding the wife’s claim did not relate back, the court of appeal explained that “[ejven if the defendants have actual knowledge of other persons involved in the tort, there is no relation back unless the original petition gives reasonable notice that these persons will have a claim.” In the instant case, the added claims for Sarah are survival and wrongful death damages in a medical malpractice suit filed by her 112mother and her sister, the widow of the decedent and one of his children. Such claims from a surviving child would normally be expected and are much less attenuated then a claim for loss of consortium damages from a wife in a wrongful employment termination suit, which would not be as predictable. In other words, that a surviving child might eventually assert survival and wrongful death actions along with those asserted originally by her mother and sister is much more likely than a wife eventually seeking loss of consortium damages in a wrongful employment termination suit.
This brings us to the fourth factor, whether the defendants would be prejudiced in preparing and conducting their defense if Sarah is allowed to assert her wrongful death claim at this time. With regal'd to the survival action asserted by Sarah, the defendants cannot, and essentially do not, claim they would be prejudiced by preparing or conducting their defense as to this claim. Thus, the issue of prejudice to the defendants, as the court of appeal observed, relates solely to Sarah’s wrongful death action. Notwithstanding that, from a prejudice standpoint, the passage of time between the filing of the original petition and the amending petition logically weighs in general against the relating back of the amendment, we agree with the lower court that there has been no showing of prejudice in this case. Sarah’s claim for wrongful death is in large part the same as the original plaintiffs, her mother and sister, that is, she must still prove that the defendants committed malpractice, that such malpractice caused her father’s death, and that those actions caused her damages. Thus, the evidence necessary to defend against Sarah’s claim of malpractice is the same evidence necessary to defend against the claim of the original plaintiffs.
While Sarah’s quantum damages will surely be different from those of her mother and sister, the defendants have not shown with any particularity how the | isdelay in this case actually prejudices them in preserving evidence and preparing for trial on the amended wrongful death claim with respect to quantum. Unlike in Giroir, a post-trial case, this case has not yet proceeded to trial, and the defendants have made only general allegations of prejudice to preparation of their defense. The deposition testimony of Sarah and her sister Theresa sets forth at length, and quite explicitly, the nature, good and bad, of Sarah’s relationship with her family and her father. There is no reasonable indication from the record of the hearing on the exception of prescription that the defendants have been prevented or impaired in any way from discovering evidence regarding Sarah’s relationship with her father *194 and how his death affected her. Additionally, the fact that a wrongful death claim for Sarah might necessarily increase any quantum liability for the defendants, and thereby in a sense cause “prejudice” to the defendants, was an issue laid to rest in Giroir, wherein the wrongful death claims of the two adult children were allowed to relate back to the filing of their father’s petition for damages. Accordingly, we conclude that the fourth Giroir factor was also satisfied in that the defendants would not be prejudiced in preparing and conducting their defense by the relation back of the amended petition adding Sarah’s wrongful death claim.
CONCLUSION
We find that Sarah was entitled to the interruption of prescription on the survival action and that the amending petition adding her as a plaintiff to that cause of action was timely; thus, the district court properly overruled the defendant’s exception of prescription with regard to Sarah’s survival claim. Further, we have considered the Giroir factors under the totality of the circumstances of this case, and, based on our examination, we find that the amended wrongful death claim arises out of the same conduct, transaction or occurrence set forth in the original |upleading, the defendants either knew or should have known of the existence and involvement of Sarah, who is not a wholly new or unrelated party, and the defendants will not be prejudiced in preparing and conducting their defense to Sarah’s claim. We conclude the district court properly permitted the amended petition adding Sarah’s wrongful death claim to relate back to the original timely-filed petition under La. Code Civ. Proc. art. 1153. Accordingly, the decision of the court of appeal is affirmed.
AFFIRMED AND REMANDED.
KIMBALL and WEIMER, JJ., additionally concur and assign reasons.
VICTORY, TRAYLOR and KNOLL, JJ., dissent and assign reasons.

. In her deposition, Sarah explained that her poor relationship with her mother, who has multiple sclerosis, was exacerbated by the death of her father and that she could not face the emotional ordeal of a lawsuit. According to Sarah, her mother abandoned the two daughters after the father's death, and they did not speak for over three years. She explained that, because she came to realize she could be subpoenaed to testify as a witness, i.e., become involved in the suit, she later decided to join the case as a party plaintiff.

. The defendants also argue the district court erroneously relied on Phillips and Tureaud for the proposition dial the filing of a wrongful death claim by one sibling interrupted prescription as to the other sibling. However, they acknowledge that the court of appeal resolved the case based on Giroir and did not reach the question of whether the trial court erred in relying upon these cases. As did the court of appeal, we need not determine whether the district court actually relied on these cases in overruling the defendant's exception of prescription and, if so, whether that reliance was or was not correct.

. According to her deposition, Sarah explained that her mother became distraught at the news of her father’s death and was taken to the hospital's emergency room. Because her mother was in the emergency room and because Theresa was then still a minor, the hospital asked Sarah, who was 19 or 20 years old at the time, to sign various papers acknowledging her father's death. Sarah was thus named, and her address provided, as the "informant” on her father’s death certificate.