WILLIAMS, J.
| plaintiff, Maxie K. Marenghi, appeals a district court ruling sustaining a peremptory exception of prescription and granting summary judgment in favor of defendants, Dr. Fakhre Fakhre and Louisiana Medical Mutual Insurance Company (“LAMMI-CO”). For the following reasons, we affirm.
FACTS
The decedent, Minnie E. King, was a resident of West Carroll Care Center, Inc. (“WCCC”), a nursing home located in Oak Grove, Louisiana. On July 15, 2008, the decedent, who was 84 years old, was admitted to West Carroll Memorial Hospital under the care of Dr. Fakhre Fakhre. Her chief complaint was abdominal pain and abdominal distention. She was diagnosed with diverticulitis and remained hospitalized for three days. On July 18, 2003, the decedent was discharged from the hospital and readmitted to WCCC; she remained under Dr. Fakhre’s care. The decedent died at WCCC on July 26, 2003.
On July 14, 2004, plaintiff, Maxie K. Marenghi, the decedent’s daughter, filed a complaint, requesting that a medical review panel evaluate the medical treatment provided to the decedent by Dr. Fakhre and WCCC. Plaintiff alleged that the decedent was treated with Levaquin, an antibiotic, while in the hospital, and the drug was continued for five days after her discharge. She asserted that Levaquin was not the appropriate antibiotic to treat diverticulitis. Plaintiff also alleged that “ [appropriate culture and susceptibility tests should [have been] performed before treatment in order to isolate and identify organisms causing the infection and to determine 12their susceptibility to Levaquin.” More generally, plaintiff alleged that Dr. Fakhre and WCCC “were negligent based upon the health care or professional services rendered, or which should have been rendered, to [the decedent], including failure to render services timely.” Plaintiff also alleged that defendants were negligent in the following aspects: (1) inappropriate medical management of the decedent’s condition; (2) failure to seek appropriate consultation; (3) failure to appropriately monitor the decedent; and (4) failure to provide adequate care and appropriate healthcare, including services consistent with the resident care plan, and (5) “any other acts or omissions supporting the conclusion that the defendants failed to comply with appropriate standard of care as determined by the medical review panel based on the evidence presented.”
Thereafter, a medical review panel convened. On May 10, 2006, the panel unanimously determined that the evidence presented did not support the conclusion that Dr. Fakhre and WCCC failed to meet the applicable standard of care as charged in the complaint. In its written reasons, the panel stated, in pertinent part:
[[Image here]]
[T]he panel finds the assessment and recommended treatment with Levaquin as the antibiotic of choice and placement of NG tube in this elderly patient were acceptable management. Levaquin is a standard antibiotic in uncomplicated cases of diverticulitis and provides a *849 good spectrum and anaerobic coverage. In addition, it is noted the patient was allergic to other antibiotics, which might have been available. Mrs. King improved with the conservative care given and therapy prescribed.
[[Image here]]
On August 28, 2006, plaintiff filed the instant medical malpractice [¡¡lawsuit against WCCC, Dr. Fakhre and his malpractice insurer, LAMMICO.[1] Plaintiff alleged:
[[Image here]]
8.
On July 15, 2008, [Ms. King], age 84, was admitted to West Carroll Memorial Hospital in Oak Grove under the care of Fakhre Fakhre, M.D. with a chief complaint of abdominal pain and abdominal distention. She was initially seen by John Tilmon, PA-C for Dr. Fakhre. Physical examination noted gross abdominal distention with decreased bowel sounds times 4, tenderness in all four quadrants. Initial flat and upright films showed distended large colon with possible irritation secondary to diverticulitis, as well as some fluid levels in the right upper quadrant. She had a history of “severe diverticulitis,” and macular degeneration with almost total blindness.
4.
On July 16, 2003, Ms. King was seen again by John Tilmon, and her diet was advanced to clear with no milk.
5.
On July 17, 2003, Ms. King was again seen by John Tilmon. Her diet was advanced to regular 1800 calorie ADA diet with no milk.
6.
On July 18, 2003, Ms. King was again seen by John Tilmon, and discharged to West Carroll Care Center, Inc. in Oak Grove on outpatient therapy for diverticulitis. She was given Levaquin 500 mg [one tablet by mouth every day] for five days, and FiberCon [two tablets by mouth two times a day] for constipation. Her principal discharge diagnosis by PA-C Tilmon was “acute diverticulitis, improving.”
7.
On July 26, 2003, Ms. King died while at [WCCC]. The Certificate of Death is listed as ‘Cardiorespiratory failure’ due to as a consequence of ‘CVA.’
8.
Petitioner shows and avers that the defendants, including their agents and employees, breached the applicable standards of care which were a proximate cause of the damages sued upon. In particular, those breaches include:
|4a. Inappropriate medical management of the patient’s condition,
b. Failure to seek appropriate consultation,
c. Failure to appropriately monitor the patient, and
d. Failure to provide adequate and appropriate health care, including services consistent with the resident care plan.
On June 5, 2007, Dr. Fakhre and LAM-MICO moved for summary judgment, arguing that plaintiff had failed to submit an affidavit or report from a medical expert to *850 support her allegations. The district court denied the motion.
Subsequently, plaintiff obtained an “expert” opinion from Dr. Meyer N. Solny, a physician practicing in New York, New York. In an affidavit, dated June 13, 2007, Dr. Solny stated that he had reviewed the decedent’s medical records, and opined that Dr. Fakhre “breached the standard of care for failure to ensure that anticoagulation therapy with Coumadin begun in the hospital was continued on an outpatient basis.”
On June 22, 2007, plaintiff filed a first amended petition, adding an allegation that defendants “fail[ed] to ensure that anticoagulation therapy with Coumadin begun in the hospital was continued on an outpatient basis.” In response to the first amended petition, all defendants filed peremptory exceptions of prescription, arguing that the allegation pertaining to an-ticoagulation therapy had prescribed. Defendants asserted that Coumadin was not administered to the decedent during the hospitalization from which plaintiffs lawsuit arose. According to defendants, the decedent’s medical records revealed that she was treated with Coumadin during a previous hospitalization, from June 19-24, 2003; the last dose of Coumadin was 1 .¡¡administered on June 24, 2003, when the decedent was discharged from the hospital. In the alternative, defendants filed dilatory exceptions of prematurity. Defendants argued that the new allegation, pertaining to the alleged failure to continue anticoagulation therapy, constituted a new claim, which had not been reviewed by the medical review panel. The district court denied the exceptions of prescription; however, the court granted the exceptions of prematurity and dismissed the first amended petition as premature.
Subsequently, plaintiff presented the claim regarding the anticoagulation therapy to the medical review panel. On November 21, 2008, the panel concluded that “[t]he evidence presented does not support the conclusion that the defendants, [WCCC] and Dr. Fakhre Fakhre, failed to meet the applicable standard of care as charged in the complaint.” The panel stated:
The panel finds that the care and treatment rendered by Dr. Fakhre Fakhre was appropriate. Ms. King presented to West Carroll Memorial Hospital on June 19, 2003, with complaints of severe vertigo, syncope, severe anxiety and rule out CVA. Ms. King’s medical history included TIAs.
The evidence presented and reviewed does not support the conclusion that Ms. King suffered from atrial fibrillation. The EKG does not support this conclusion. However, in efforts to rule out CVA, Dr. Fakhre ordered a CT scan of the head, which showed no acute bleed. In effort ... to rule out CVA, Dr. Fakhre correctly discontinued her current medications of Plavix and aspirin, placing her on Coumadin and Heparin therapy, while in the hospital. Follow up testing and treatment indicated no evidence of a stroke. The Coumadin and Heparin were appropriately discontinued. The patient was discharged with instructions to resume Plavix and aspirin. The physician was correct in ceasing use of | fiCoumadin, which holds high risk of bleeds for an elderly patient like Ms. King. It is noted that post discharge PT, INR testing were ordered. The panel finds that Dr. Fakhre Fakhre complied with acceptable standard of care in his treatment of Ms. King during and after hospitalization. In addition, the panel finds no deviation of acceptable standard of care by the *851 staff of the defendant Health care provider, West Carroll Care Center.
On January 13, 2009, Dr. Fakhre and LAMMICO moved for summary judgment, arguing that plaintiff had not identified an expert that would contradict the opinion of the first medical review panel. Defendants argued that Dr. Solny’s affidavit “clearly indicate[d] that he ha[d] rendered no expert opinion as to use or nonuse of antibiotics and his opinion addressed only the use of Coumadin which is not an issue in the pleadings as this suit is presently postured.” WCCC subsequently moved for summary judgment on similar grounds. On March 10, 2009, the district court granted partial summary judgment, dismissing plaintiffs claims “concerning any and all claims for or related to the failure to treat an infection with antibiotics asserted in the original petition[.]”
On February 19, 2009, one day prior to the hearing on the motion for summary judgment, plaintiff filed a second amended petition, reasserting the allegation pertaining to Coumadin. Plaintiff also added Paragraph 14 to the petition, which stated:
As reflected in the records of [WCCC], on July 25, 2003 at 4:00 p.m., petitioner called a staff member to relay the information that Ms. King told her that she had another ‘light stroke (TIA)’ that evening and couldn’t talk for a while. A nurse saw Ms. King and Ms. King could not tell the nurse what had happened other than “stomach.” Ms. King was then purportedly assessed. She related at |7that time that her left arm was ‘paralyzed’ but was able to do ROM. At 4:45 p.m. the staff contacted petitioner and told her that Ms. King was ‘alright.’ The next day, July 26, 2003, Ms. King was found unresponsive without vital signs. She was pronounced at 6:45 p.m.
In response, all defendants filed exceptions of prescription, again arguing that the decedent was treated with Coumadin during a previous hospitalization, from June 19-24, 2003. The initial claim was filed with the medical review panel on July 14, 2004; therefore, any claim objecting to the use of Coumadin had prescribed before the plaintiff had filed her initial claim before the medical review panel. The district court sustained the exception of prescription filed by Dr. Fakhre and LAMMI-CO and dismissed the second amended petition “and any and all claims contained therein as to Dr. Fakhre Fakhre and [LAMMICO].” The court granted WCCC’s exception of prescription and dismissed plaintiffs claims against WCCC with regard to the anticoagulation therapy allegation. However, the court denied WCCC’s exception with regard to claims “raised in Paragraph 14 of the Second Amended Petition[.]”[2]
On April 12, 2010, Dr. Fakhre and LAMMICO moved for summary judgment, seeking the dismissal of all remaining claims against them. The district court granted summary judgment and signed a “Final Judgment,” dismissing “any and all claims brought by Plaintiff against Dr. Fakhre Fakhre and [LAMMICO].” The court further stated, “[Although this | ^Judgment does not dispose [of] and dismiss the entire matter as plaintiff presently has claims pending against another defendant, it does dispose of and dismiss all *852 claims previously pending against [LAM-MICO] and Dr. Fakhre Fakhre.”
Plaintiff appeals.
DISCUSSION
Plaintiff contends the district court erred in sustaining the exception of prescription and dismissing the claim asserted in the amended petitions. Plaintiff argues that the claim pertaining to the failure to continue anticoagulation therapy has not prescribed.
The prescriptive period applicable to a medical malpractice suit is set forth in LSA-R.S. 9:5628, which provides:
No action for damages for injury or death against any physician ... [or] hospital ..., whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect.
(Emphasis added). Thus, a reading of LSA-R.S. 9:5628 shows that the statute sets forth two prescriptive limitations within which to bring a medical malpractice action: (1) one year from the date of the alleged act; or (2) one year from the date of discovery, with a three-year prescriptive period by which all claims must be filed. See, Borel v. Young, 2007-419 (La.7/1/08), 989 So.2d 42; Hebert v. Doctors Memorial Hosp., 486 So.2d 717 |9 (La.1986).
In order to file a medical malpractice action, a party must first present his or her proposed complaint to a medical review panel for review. LSA-R.S. 40:1299.47(B)(l)(a)(i). Additionally, LSA-R.S. 40:1299.47(A) (2) (a) provides for the suspension of the period provided in LSA-R.S. 9:5628 during the time the complaint is pending before the medical review panel.[3]
As an initial matter, we note that plaintiff did not appeal the district court’s ruling sustaining the exception of prematurity with regard to the anticoagulation claim. However, intertwined with her argument related to prescription, plaintiff asserts that the original claim was presented to the medical review panel in July 2004; therefore, the 2004 panel had sufficient information to make a determination regarding all allegations (and potential allegations) of medical malpractice related to the treatment of the decedent.
The allegations contained in plaintiffs initial malpractice complaint and her original petition arose from the decedent’s July *853 2003 hospitalization 11fland subsequent care. In plaintiffs original petition, she alleged:
[[Image here]]
3.
On July 15, 2003, [Ms. King], age 84, was admitted to West Carroll Memorial Hospital in Oak Grove under the care of Fakhre Fakhre, M.D. with a chief complaint of abdominal pain and abdominal distention. She was initially seen by John Tilmon, PA-C for Dr. Fakhre. Physical examination noted gross abdominal distention.
Plaintiff then addressed defendants’ alleged failure to conduct proper testing before prescribing and/or administering antibiotics and other general negligence claims. Plaintiff did not state any claim regarding the alleged failure to continue anticoagulation therapy. In the amended petitions, plaintiff added an allegation that plaintiff was treated with Coumadin, and defendants “fail[ed] to ensure that anticoagulation therapy with Coumadin begun in the hospital was continued on an outpatient basis.” The original petition specifically alleged negligence during and following the decedent’s July 2003 hospitalization; however, neither mentioned the June 2003 hospitalization, nor the an-ticoagulation therapy. Consequently, we find that the allegations asserted in the amended petition arose from an entirely separate, unrelated incident and/or hospitalization, and did not arise out of the conduct objected to in the original petition.
Plaintiffs request for a medical review panel was filed on July 14, 2004, and her subsequent lawsuit was filed on August 28, 2006. In both filings, plaintiff alleged that the decedent was admitted to the hospital on July 15, 2003, was discharged on July 18, 2003, and died July 26, 2003. All of the allegations contained in those filings were based on the alleged negligent care rendered to the decedent during and following her Inhospitalization from July 15-18, 2003. As stated above, neither filing mentioned the decedent’s June 2003 hospitalization, during which Coumadin was prescribed and subsequently discontinued upon her discharge. Therefore, we find that the district court did not err in finding that the claims pertaining to Coumadin constituted “new claims.” Since the claims with regard to the misuse of the Coumadin were not brought within one year from the date of the alleged act, omission or neglect, ie., the date the medication was discontinued, we agree that the claims have prescribed.
In the alternative, plaintiff argues that her amended petition with allegations challenging the anticoagulation therapy related back to the date the original petition was filed, and therefore, the anticoagulation claim has not prescribed.
LSA-C.C.P. art. 1153 provides:
When the action or defense asserted in the amended petition or answer arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of filing the original pleading.
In Warren v. Louisiana Medical Mutual Ins. Co., 2007-0492 (La.12/2/08), 21 So.3d 186, on rehearing, our Supreme Court stated:
Because medical malpractice actions are governed by the specific provisions of the Act regarding prescription and suspension of prescription, under Borel, we find that any general codal article which conflicts with these provisions may not be applied to such actions in the absence of specific legislative authorization in the Act. The Act has no rules allowing relation back of pleadings for medical mal *854 practice claims. The application of [LSA-C.C.P.] Article 1153 would permit the adding of a plaintiff subsequent to the expiration of the three-year period provided for in La. R.S. 9:5628, and would read out of the statute the prescription and suspension period 112provisions by La. R.S. 9:5628 and La. R.S. 40:1299.47; therefore, La.C.C.P. art. 1153 may not be applied to the medical malpractice action under the reasoning of LeBreton [v. Rabito, 97-2221 (La.7/8/98), 714 So.2d 1226] and Borel.
Id. at 207-208 (footnote omitted).
In the instant case, the claim requesting a medical review was filed within one year of the decedent’s death. However, the claim pertaining to the June 2003 hospitalization and anticoagulation therapy was not asserted in the original petition. Thus, based on LSA-R.S. 9:5628 and the supreme court’s ruling in Warren, swpra, the filing of the original claim and subsequent lawsuit had no effect on the running of the peremptory period, and the amended petition adding an additional, unrelated claim did not relate back to the date of the filing of the original petition.
Plaintiff also contends the district court erred in granting summary judgment, dismissing all remaining claims against Dr. Fakhre and LAMMICO. Plaintiff argues that defendants had moved for summary judgment on June 25, 2007, and the court denied the motion. Thereafter, defendants filed another motion, using the same grounds as used in the first motion, offering no new argument to support the new motion. Therefore, according to plaintiff, defendants are prohibited from moving for summary judgment based upon the same grounds asserted in the original motion.
A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. Samaha v. Rau, 2007-1726 (La.2/26/08), 977 So.2d 880; Duncan v. USAA Ins. Co., 2006-363 (La.11/29/06), 950 So.2d 544; see also | ^LSA-C.C.P. art. 966. Appellate courts review summary judgments de novo, while considering the record and all reasonable inferences drawn from the record in the light most favorable to the nonmovant. Hines v. Garrett, 2004-0806 (La.6/25/04), 876 So.2d 764; Austin v. Bundrick, 41,064 (La.App.2d Cir.6/30/06), 935 So.2d 836. Summary judgment is warranted only if there is no genuine issue of material fact and the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(C)(1). In Hines, supra, the supreme court stated:
In ruling on a motion for summary judgment, the judge’s role is not to evaluate the weight of the evidence or to determine the truth of the matter, but [is] to determine whether there is a genuine issue of triable fact. All doubts should be resolved in the non-moving party’s favor. A fact is material if it potentially insures or precludes recovery, affects a litigant’s ultimate success, or determines the outcome of a legal dispute. A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for a trial on that issue and summary judgment is appropriate.
Id. at 765-66.
The burden of proof remains with the movant. LSA-C.C.P. art. 966(C)(2). However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Id. Thereafter, *855 if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at |,4trial, there is no genuine issue of material fact. Id.
To establish a claim for medical malpractice, a plaintiff must prove, by a preponderance of the evidence: (1) the standard of care applicable to the defendant; (2) that the defendant breached that standard of care; and (3) that there was a causal connection between the breach and the resulting injury. LSA-R.S. 9:2794(A). Expert testimony is generally required to establish the applicable standard of care and whether or not that standard was breached, except where the negligence is so obvious that a lay person can infer negligence without the guidance of expert testimony. Schultz v. Guoth, 2010-0343 (La.1/19/11), 57 So.3d 1002; Samaha v. Rau, supra.
In Pfiffner v. Correa, 94-0924, 94-0992 (La.10/17/94), 643 So.2d 1228, the supreme court stated:
The jurisprudence has also recognized that there are situations in which expert testimony is not necessary. Expert testimony is not required where the physician does an obviously careless act, such as fracturing a leg during examination, amputating the wrong arm, dropping a knife, scalpel, or acid on a patient, or leaving a sponge in a patient’s body, from which a lay person can infer negligence.
[[Image here]]
Though in most cases, because of the complex medical and factual issues involved, a plaintiff will likely fail to sustain his burden of proving his claim under LSA-R.S. 9:2794’s requirements without medical experts[.]
Id. at 1233-34 (internal citations omitted).
In the instant case, plaintiff does not contend defendants committed an “obviously negligent” act. Rather, plaintiff merely contends defendants should not have been allowed to move for summary judgment again, after the district court had denied the motion for summary judgment in 2007.
lisOur de novo review of the record reveals that defendants, in support of the motion for summary judgment, introduced into evidence the unanimous opinion of the medical review panel, which concluded that defendants did not fail to meet the applicable standard of care. Therefore, the burden shifted to plaintiff to show that there are genuine issues of material fact. Other than the affidavit of a physician licensed in the state of New York regarding anti-coagulation therapy, plaintiff did not produce any evidence, expert or otherwise, to oppose the opinion of the medical review panel. Even if the affidavit submitted by plaintiff was sufficient to establish a breach of the standard of care, plaintiff has not offered any evidence to establish that the purported breach caused or contributed to the decedent’s death. Therefore, we find that the district court did not err in granting summary judgment in favor of defendants.
CONCLUSION
For the reasons set forth herein, the judgment of the district court is affirmed. Costs are assessed to appellant, Maxie K. Marenghi.
AFFIRMED.

. Plaintiff also named the Louisiana Hospital Association Malpractice and General Liability Trust Fund as a defendant. That entity was dismissed from this lawsuit.

. WCCC filed an application for supervisory writ with this court. On April 1, 2010, we denied the writ application, stating, "Upon the showing made, the exercise of this Court’s supervisory jurisdiction is not warranted.” Marenghi v. Louisiana Mut. Medical Ins. Co., 45,330 (La.App.2d Cir.4/1/10) (unpublished). Therefore, some of the claims against WCCC are still pending in district court. None of the claims against WCCC are at issue in this appeal.

. LSA-R.S. 40:1299.47(A)(2)(a) provides, in pertinent part:
The filing of the request for a review of a claim shall suspend the time within which suit must be instituted, in accordance with this Part, until ninety days following notification, by certified mail, as provided in Subsection J of this Section, to the claimant or his attorney of the issuance of the opinion by the medical review panel, in the case of those health care providers covered by this Part, or in the case of a health care provider against whom a claim has been filed under the provisions of this Part, but who has not qualified under this Part, until ninety days following notification by certified mail to the claimant or his attorney by the board that the health care provider is not covered by this Part. The filing of a request for review of a claim shall suspend the running of prescription against all joint and solidary obligors, and all joint tortfea-sors, including but not limited to health care providers, both qualified and not qualified, to the same extent that prescription is suspended against the party or parties that are the subject of the request for review[.]