CYNTHIA GUEVARA, ET AL     *     NO. 2024-C-0211

VERSUS     *

    COURT OF APPEAL

HOSPITAL SERVICE     *
DISTRICT OF THE PARISH
OF ST. BERNARD, STATE OF     *     FOURTH CIRCUIT
LOUISIANA A/K/A ST.     STATE OF LOUISIANA
BERNARD PARISH HOSPITAL   * * * * * * *
SERVICE DISTRICT D/B/A ST.
BERNARD PARISH
HOSPITAL, AND DR. RYAN
TRUXILLO

APPLICATION FOR WRITS DIRECTED TO
ST. BERNARD 34TH JUDICIAL DISTRICT COURT
NO. 16-0710, DIVISION "C"
Honorable Kim C. Jones, Judge Presiding
* * * * * *
**Judge Nakisha Ervin-Knott**
* * * * * *

(Court composed of Chief Judge Terri F. Love, Judge Dale N. Atkins, Judge
Nakisha Ervin-Knott)


Richard H. Barker
601 Poydras Street, Suite 2345
New Orleans, Louisiana 70130

    COUNSEL FOR RESPONDENT/PLAINTIFF

Kathryn M. Caraway
Ann Marie LeBlanc
Erica L. Andrews
CARAWAY LEBLANC, L.L.C.
3936 Bienville Street
New Orleans, Louisiana 70119
-AND-
Elizabeth Lisa Borne Knott
TABARY & BORNE LLC
3 Courthouse Square
Chalmette, Louisiana 70043

    COUNSEL FOR RELATORS/DEFENDANTS

    **WRIT GRANTED; JUDGMENT REVERSED AND RENDERED**
                                            **May 30, 2024**

Relator, Dr. Ryan Truxillo ("Dr. Truxillo") seeks review of the trial court's March 11, 2024 judgment denying his motion for summary judgment. For the following reasons, we grant Dr. Truxillo's writ application; reverse the trial court's March 11, 2024 judgment denying his motion for summary judgment; grant Dr. Truxillo's motion for summary judgment against Plaintiffs; and dismiss Plaintiffs' case with prejudice.

NEK
TFLD
NA

## FACTUAL AND PROCEDURAL HISTORY

In January 2015, Darlene Cole Martello ("Ms. Martello") was admitted into St. Bernard Parish Hospital ("Hospital") after a fall at her home. Ms. Martello was diagnosed with a hairline fracture of her shoulder and pneumonia. While hospitalized, she was taken off of her prescribed blood thinner medication, Warfarin, in order to better treat her condition. Upon discharge, Ms. Martello followed up with Dr. Truxillo where he discontinued her use of Warfarin altogether. Shortly thereafter, Ms. Mantello developed a deep vein thrombosis, which lead to a fatal pulmonary embolism.

On January 27, 2016, Cynthia M. Guevara, Danny Martello, and Samuel Martello Jr. (collectively "Plaintiffs") individually and o/b/o the Estate of Darlene

1

Cole Martello, filed a medical malpractice complaint with the Patient's Compensation Fund ("PCF") against Dr. Truxillo and the Hospital alleging the failure of the Hospital and Dr. Truxillo to properly monitor Ms. Martello's blood once she stopped taking Warfarin and/or to restart the blood thinners was the cause of her death and such failure was below the standard of care. Nearly three years after filing the PCF complaint, the medical review panel unanimously concluded the evidence did not support the conclusion that Dr. Truxillo and the Hospital "failed to meet the applicable standard of care as charged in the complaint." Specific to Dr. Truxillo, the panel concluded "[a]t the time of discharge there was no indication that the patient should have been on anti-coagulation therapy," and "[i]t was clearly documented by Dr. Truxillo that the patient was at a high risk for falls and therefore not a candidate for anti-coagulation."

Subsequently, on February 21, 2019, Plaintiffs filed a post-medical review panel petition for damages asserting the same claims contained in the PCF complaint against Dr. Truxillo and the Hospital. Over four years later, Dr. Truxillo filed a motion for summary judgment contending that Plaintiffs did not have a medical expert to opine on any of their alleged breaches in the standard of care or causation. In opposition to the motion for summary judgment, Plaintiffs attached the affidavit of Dr. Gregory Herman ("Dr. Herman") who stated, in part, "It is my opinion that there is no breach in the standard of care [to discontinue Warfarin] that was provided to this patient. The care was good." However, Dr. Herman contemplated whether Ms. Martello provided informed consent to stop the Warfarin. Stemming from this possible lack of informed consent claim, Dr. Herman further opined on a potential loss chance of survival claim – "If the patient had been informed as to all options and risks and benefits of each, and she opted to take the warfarin after

2

hospitalization, it is reasonable to opine that her chance of dying from a blood clot in the lungs secondary to a blood clot in the legs would have been lower on the day of her death." Noticeably missing from Dr. Herman's affidavit was information about his educational background, skill, training, or expertise.

The hearing on Dr. Truxillo's motion for summary judgment occurred on February 22, 2024, and less than a month later, on March 11, 2024, the trial court issued a judgment and reasons for judgment denying the motion. In the trial court's judgment, it stated:

> Plaintiffs submitted the affidavit of their expert, Dr. Gregory Herman who opined "there existed a breach in the doctor-patient relationship and informed consent to treat or not to treat did not occur." Dr. Herman's affidavit creates genuine questions of material fact which preclude the granting of summary judgment.

Within the thirty-day prescribed period, Dr. Truxillo filed a notice of intention to file supervisory writ of certiorari that was signed by the trial court on the day of filing. Dr. Truxillo now seeks supervisory review of the trial court's denial of his summary judgment motion.

**DISCUSSION**

The appellate court reviews a ruling on a motion for summary judgment under a *de novo* standard, giving no deference to the ruling or reasons of the trial court. *Precept Credit Opportunities Fund, L.P. v. Elmore*, 2021-0502, p. 3 (La. App. 4 Cir. 4/20/22), 338 So.3d 87, 89-90 (citations omitted). The trial court must grant a motion for summary judgment if, after the parties had an "opportunity for adequate discovery," the mover proves that there are no genuine issues of material fact to be resolved. La. C.C.P. art. 966(A)(3). If the mover meets his burden, then the burden shifts to the non-moving party to bring forth evidence showing that a genuine issue of material fact remains. La. C.C.P. art. 966(D)(1); *Babin v. Winn- Dixie Louisiana,*

3

*Inc.*, 2000-0078, p. 4 (La. 6/30/00), 764 So.2d 37, 39-40. If the non-moving party fails to produce evidence of such, the court is required to grant summary judgment. *E.g. Babin*, 2000-0078, p. 4, 764 So.2d at 40; *Jones v. Boot Bar & Grill*, 2022-0154, p. 13 (La. App. 4 Cir. 10/05/22), 350 So.3d 968, 979.

Although Dr. Truxillo asserts multiple assignments of error, the dispositive issue is whether the trial court erred in denying his motion for summary judgment.[1] Dr. Truxillo filed a motion for summary judgment asserting Plaintiffs failed to produce appropriate expert opinion evidence establishing the applicable standard of care, his breach of that standard of care, or that any alleged breached on his part proximately caused damages – Ms. Martello's death. In support of his motion for summary judgment, Dr. Truxillo attaches the medical review panel's opinion where the panel unanimously determined "[t]he evidence does not support the conclusion that the defendants [inclusive of Dr. Truxillo] failed to meet the applicable standard of care as charged in the complaint."[2] In opposition to Dr. Truxillo's motion, Plaintiffs attach the affidavit of their expert, Dr. Herman, who opined:

> It is my opinion that there is no breach in the standard of care that was provided to this patient. The care was good. The only thing missing was the opportunity, twice, for the patient to be presented with all the current information with which to advocate for herself on her care options. If it's true that the doctor said "she does not need it" without

---

[1] Specifically, Dr. Truxillo asserts three assignments of error:

> 1. The trial court erred in finding that Plaintiffs could raise an alleged "informed consent" claim for the first time nine years after the care in question, when an informed consent claim prescribes in one year.
> 2. The trial court erred in relying on Dr. Gregory Herman's affidavit when Plaintiffs failed to properly provide evidence he was qualified by education, experience, competence, or training to provide expert support in this case.
> 3. The trial court erred by disregarding law that requires an expert in an informed consent matter to testify as to the risk of the medical care and the likelihood such a risk would occur, as required by the Supreme Court case, *Hondroulis v. Schumacher*, 553 So.2d 398, 412 (La. 1988), and its progeny.

[2] "In a medical malpractice case, the medical review panel's opinion is admissible as expert evidence on a motion for summary judgment." *Williams v. Mem'l Med. Ctr.*, 2003-1806, p. 15 (La. App. 4 Cir. 3/17/04), 870 So.2d 1044, 1053 (citation omitted).

further discussion, then no shared decision process occurred, there existed a breach in the doctor-patient relationship and informed consent to treat or not treat did not occur.

According to the complaint, the cause of death was blood clot in lungs due to blood clot in legs. Since we do not know, based on records presented, if there was a blood clot in her legs at discharge we can't know if that could or would have been considered in the decision. There is no way to know with medical certainty when the clot in the legs formed. If the patient had been informed as to all options and risks and benefits of each, and she opted to take the warfarin after hospitalization, it is reasonable to opine that her chance of dying from a blood clot in the lungs secondary to a blood clot in the legs would have been lower on the day of her death. There is no way to know with medical certainty how long this statistical benefit to the patient would have lasted beyond that date.

Based on Dr. Herman's affidavit, Plaintiffs maintain they provided expert opinion evidence establishing Dr. Truxillo's breach of the standard of care regarding informed consent and lost chance of survival. Notably, Dr. Herman's affidavit does not provide any information to demonstrate he meets the criteria set forth in La. R.S. 9:2794(D)(1),[3] and Plaintiffs failed to attach his curriculum vitae to their

---

[3] Specific to medical malpractice actions, La. R.S. 9:2794(D)(1) sets forth the qualifications an expert must possess in order to qualify to testify about a physician's care:

> In a medical malpractice action against a physician, licensed to practice medicine by the Louisiana State Board of Medical Examiners under R.S. 37:1261 et seq., for injury to or death of a patient, a person may qualify as an expert witness on the issue of whether the physician departed from accepted standards of medical care only if the person is a physician who meets all of the following criteria:
>
> (a) He is practicing medicine at the time such testimony is given or was practicing medicine at the time the claim arose.
> (b) He has knowledge of accepted standards of medical care for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim.
> (c) He is qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of care.
> (d) He is licensed to practice medicine by the Louisiana State Board of Medical Examiners under R.S. 37:1261 et seq., is licensed to practice medicine by any other jurisdiction in the United States, or is a graduate of a medical school accredited by the American Medical Association's Liaison Committee on Medical Education or the American Osteopathic Association.

opposition.[4] Further damaging to Plaintiffs' opposition is the fact that Dr. Herman's affidavit opines on alleged breaches of the standard of care - informed consent and lost chance of survival - that were not contained in Plaintiffs' PCF complaint and had not been submitted to the medical review panel as required by the Louisiana Medical Malpractice Act.[5] Moreover, any potential informed consent or lost chance of survival claims are now prescribed.

"The peremptory exception may be pleaded at any stage of the proceeding in the trial court prior to a submission of the case for a decision . . . ." La. C.C.P. art. 928(B). In reply to Plaintiffs' opposition, Dr. Truxillo contends any claims that have not been raised during the medical review panel stage and included in the petition for damages are now prescribed. In accordance with La. R.S. 9:5628,[6] informed consent and lost chance of survival claims must be brought within one year of the healthcare at issue. The healthcare at issued occurred in January 2015, while Ms. Martello was hospitalized. Nine years later, through their purported expert – Dr. Herman – Plaintiffs raise these claims for the first time in order to defeat Dr. Truxillo's motion for summary judgment. In Louisiana, there is no "relation

---

[4] Louisiana Code of Civil Procedure Article 966(D)(2) states, in pertinent part, "The court shall consider only those documents filed or referenced in support of or in opposition to the motion for summary judgment . . . ."

[5] Louisiana Revised Statutes 40:1231.8(A)(1)(a) states, in part, "All malpractice claims against health care providers covered by this Part . . . shall be reviewed by a medical review panel . . . ."

[6] Louisiana Revised Statutes 9:56289(A) states:

> No action for damages for injury or death against any physician, chiropractor, nurse, licensed midwife practitioner, dentist, psychologist, optometrist, hospital or nursing home duly licensed under the laws of this state, or community blood center or tissue bank as defined in R.S. 40:1231.1(A), whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect.

back" for medical malpractice claims. *See Warren v. Louisiana Med. Mut. Ins. Co.*, 2007-0492 (La. 12/2/08), 21 So.3d 186, 207 (on rehearing) ("Because medical malpractice actions are governed by the specific provisions of the Act regarding prescription and suspension of prescription . . . we find that any general codal article which conflicts with these provisions may not be applied to such actions in the absence of specific legislative authorization in the Act. The Act has no rules allowing relation back of pleadings for medical malpractice claims") (internal citation omitted). Plaintiffs never raised informed consent or loss chance of survival claims during the medical review panel stage, nor in their petition for damages. Therefore, it is now too late to raise these claims, several years after the healthcare at issue. As Plaintiff's purported expert, Dr. Herman, allegedly establishes a breach in the standard of care only as it relates to the prescribed claims of informed consent and loss chance of survival – and fails to establish any breaches in the standard of care for the claims that were included in the PCF complaint and petition for damages – the trial court erred in denying Dr. Truxillo's motion for summary judgment.

## DECREE

Based on the foregoing reasons, we grant Dr. Truxillo's writ application; reverse the trial court's March 11, 2024 judgment denying his motion for summary judgment; grant Dr. Truxillo's motion for summary judgment against Plaintiffs; and dismiss Plaintiffs' case with prejudice.

**WRIT GRANTED; JUDGMENT REVERSED AND RENDERED**