SANDRA CABRINA JENKINS, Judge.
12Plaintiff, Luz Santiago, appeals a district court ruling sustaining the Peremptory Exception of Peremption in favor of defendants, Dr. Robert L. Barrack, Dr. Scott Montgomery, Dr. Michael Adams, Dr. Sujal Shah, Dr. Brian Rogers, and their employer, the Administrators of the Tulane Educational Fund (hereinafter, “Administrators”). At issue is whether or not the trial court erred in dismissing all of the plaintiffs claims against these defendants as untimely.
For the reasons assigned below, the trial court’s judgment is affirmed in part and reversed in part. In particular, we find that the trial court erred in dismissing all of the plaintiffs claims against an originally named defendant, Dr. Robert Barrack, as untimely where the claims in the original petition were filed well within the three year deadline set forth in La. R.S. 9:5628. *678 We further find that because La. R.S. 9:5628’s deadline is prescriptive, rather than peremptive in nature, the plaintiffs remaining claims should have instead been dismissed as prescribed. The trial court’s judgment is affirmed in all other respects.
LFACTS AND PROCEDURAL HISTORY
This is a medical malpractice case arising out of allegations that Ms. Santiago received fall-related injuries following left hip replacement surgery performed at Tulane University Hospital and Clinic on April 14, 2003. The facts and dates which are relevant to her appeal are delineated below:

Original PCF Complaint and Petition for Damages

On April 8, 2004, Ms. Santiago filed a complaint with the Louisiana Patient’s Compensation Fund and Oversight Board (“PCF”) against her surgeon, Dr. Robert Barrack; an unidentified x-ray technician; and their alleged employer/contractor, Tulane University Hospital and Clinic (“TUHC”).[1] In the complaint, Ms. Santiago alleged that she was “dropped or improperly and inadequately restrained” while undergoing post-operative testing and while still under general anesthesia. As a result of the fall, the plaintiff claimed that she sustained multiple severe and disabling injuries including but not limited to injury to her “right leg fibula.” She claimed that these injuries were caused by the individual and collective acts of each of the named defendants, whose actions she alleged fell below the applicable standard of care.
The medical review panel rendered a unanimous decision in favor of Dr. Barrack on July 10, 2006, finding no evidence that he breached the standard of care. The medical review panel also found no evidence that Dr. Barrack’s employer, Administrators (improperly identified in the plaintiffs PCF complaint as TUHC),[2] breached the applicable standard of care as charged in the complaint. [^Specifically, the medical review panel concluded that the medical records showed no evidence of a right fibula fracture as alleged by the plaintiff. Rather, the records showed the existence of a left femur fracture, which the panel explained was a well-known complication total hip replacement surgery.
*679 The medical review panel rendered a split opinion as to TUHC. While two of the members concluded that there was also no breach in the standard of care by TUHC, the third member found there to be an issue of fact as to whether or not the plaintiff had been dropped by an x-ray technician. The record indicates that the plaintiff received the medical review panel’s opinion on August 24, 2006.
On July 21, 2006, the plaintiff filed a Petition for Damages in Orleans Parish Civil District Court. Like the plaintiffs original PCF complaint, the petition named only Dr. Barrack, the unidentified x-ray technician, and TUHC as defendants. Ms. Santiago’s petition also made the exact same allegations that were made in her original PCF complaint, including allegations that she was dropped and/or improperly restrained, resulting in a broken right leg fibula. The petition additionally alleged that plaintiffs right femur fracture[3] was caused by the negligence of these defendants.
| Supplemental and Amending Petitions
On February 7, 2007, the plaintiff filed a First Supplemental and Amending Petition. This petition was amended to name University Healthcare System, L.C., (hereinafter, also referred to as “TUHC”)[4] as the defendant employer of both Dr. Barrack and the unnamed x-ray technician. In its Answer, TUHC expressly denied employing Dr. Barrack.[5]
Plaintiff then filed a Second Supplemental and Amending Petition for Damages on May 14, 2007, which differed from the prior amendment in four significant ways:
First, this second amended petition named four additional doctors as defendants for the first time: Drs. Michael Adams, Scott Montgomery, Sujal Shah, and Brian Rodgers. Administrators was also named as a defendant for the first time, in its capacity as the employer of Dr. Barrack and the newly named doctors.
Second, this petition added two radiologic technologists and two nurses as defendants. This amended petition alleged that these technologists and nurses were directly responsible for the plaintiffs fall, rather than Dr. Barrack and the “unidentified x-ray technician.”
Third, the plaintiff amended her petition to allege injury to her left, rather than right femur.
Fourth, the plaintiff set forth completely new allegations of negligence in this petition. She claimed that the doctors, including Dr. Barrack, were at fault for failing to diagnose and report her left femur fracture; failing to take immediate faction to prevent further harm; and falsifying her operative and x-ray reports. She also claimed that the doctors were incompetent and unprofessional.
In response to this Second Supplemental and Amending Petition, the doctors filed an Exception of Prematurity, alleging that the claims against them should be dismissed as premature because they had not *680 been submitted to a medical review panel as required by the Louisiana Medical Malpractice Act, La. R.S. 40:1299.47(A)(1). In an apparent attempt to remedy the issues raised in the defendants’ exception, the plaintiff filed a “supplemental complaint” with the PCF which named all five doctors, and the nurses and technologists as defendants.[6] This supplemental PCF complaint addressed the issues that had been newly raised in plaintiffs second amended petition.
The plaintiff simultaneously filed a motion to voluntarily dismiss her district court claims against the four newly added doctors. The four doctors were dismissed without prejudice by the district court on September 13, 2007, with the plaintiff reserving her right to pursue her claims against the other defendants.[7]

Exception of Peremption

In February of 2012, Administrators and all five defendant doctors filed an Exception of Peremption seeking a dismissal of the claims against them. They argued that the medical malpractice claims against Dr. Barrack should be |7dismissed pursuant to La. R.S. 9:5628 because the original PCF complaint and the original district court petition against Dr. Barrack could not suspend prescription where no specific allegations were lodged against him in those actions. They allege that Administrators and Drs. Adams, Montgomery, Shah, and Rodgers should be dismissed because they were not named as defendants until more than three years after the plaintiffs alleged injury. The trial court granted the Exception of Peremption filed on behalf of Administrators and the doctors on April 5, 2012, dismissing all of the petitions filed in district court, as well as the supplemental PCF complaint, with prejudice. It is from this Judgment that Ms. Santiago now appeals.
LAW AND ANALYSIS
The primary issue on appeal is whether or not the three-year deadline set forth in La. R.S. 9:5628 is an absolute bar which prevents plaintiffs in medical malpractice actions from amending their petition to add new claims or parties after this deadline has passed. Ms. Santiago argues that the trial court should have applied the “relation back” principles of La. C.C.P. art. 1153 to extend the three-year time limitation set forth in Section 5628 to newly filed claims. She further argues that La. R.S. 9:5628 is a prescriptive statute to which the principles of Article 1153 necessarily apply.
*681 Medical malpractice actions against qualified healthcare providers are governed by special legislation. LeBreton v. Rabito, 97-2221, p. 7 (La.7/8/98), 714 So.2d 1226, 1229. According to La. R.S. 40:1299.47(B)(l)(a)(i), in order to file a malpractice claim against a qualified provider, a plaintiff must first file a complaint 18with the PCF requesting that the claim be submitted to a medical review panel for review.[8] This PCF action then suspends prescription against all parties named in the complaint and all joint and solidary obligors until ninety days following notification of the opinion to plaintiffs counsel under La. R.S. 40:1299.47(A)(2)(a).[9]
Louisiana Revised Statute 9:5628(A) sets forth the time limitations applicable to filing a medical malpractice action:
No action for damages for injury or death against any physician, chiropractor, nurse, licensed midwife practitioner, dentist, psychologist, optometrist, hospital or nursing home duly licensed under the laws of this state, or community blood center or tissue bank as defined in R.S. 40:1299.41(A), whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect.
Essentially, a medical malpractice claim must be filed within one year from the date of the alleged malpractice, or within one year of the discovery of the malpractice. Most relevant to this discussion is the third deadline set forth under Section 5628, which sets forth a final three-year cut-off date for medical malpractice cases to be filed, regardless of the date of discovery of the alleged act, omission, or neglect.
|9In the present case, it is undisputed that Ms. Santiago’s second amended petition and supplemental PCF complaint were filed more than three years after the acts and omissions allegedly giving rise to her malpractice claim. However, the plaintiff claims that her amended action against the doctors and Administrators should be deemed timely under Louisiana Code of Civil Procedure Article 1158 because her original action was timely. Article 1153, also referred to as the “relation back” theory states:
When the action or defense asserted in the amended petition or answer arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of filing of the original pleading.
*682 The plaintiff argues that this relation back theory should apply regardless of whether the three-year period set forth in Section 5628 is peremptive or prescriptive in nature.
The Supreme Court has squarely addressed the precise issue raised by the plaintiff in two landmark medical malpractice eases: Borel v. Young, 07-0419 (La.11/27/07), 989 So.2d 42, on reh’g, (7/1/08), 989 So.2d at 53-81; and Warren v. Louisiana Medical Mutual Ins. Co., 07-0492 (La.12/2/08), 21 So.3d 186, on reh’g, (6/26/09), 21 So.3d at 202-18.

Borel v. Young

In Borel, the Louisiana Supreme Court was faced with the issue of whether or not the three-year deadline set forth La. R.S. 9:5628 was an absolute bar to the plaintiffs attempt to add new defendants after the three-year period had expired. To make this determination, the Court had to examine whether Section 5628 was prescriptive or peremptive in nature. On rehearing, the Court concluded that |inSection 5628 was, in fact, a prescriptive provision. Borel, pp. 28-29, 989 So.2d at 69.
The facts in Borel are somewhat similar to the facts in the present case. In Borel, the plaintiffs filed a timely medical malpractice complaint with the PCF against a hospital and two physicians. Within ninety days of being notified of the panel’s opinion in favor the defendants, the plaintiffs filed suit solely against the hospital. More than three years after the hospitalization and alleged malpractice occurred, the plaintiffs tried to amend their petition to add the doctors and their insurer. After the trial court denied the motion to amend, plaintiffs filed a separate lawsuit against the new defendants. The insurer and one of the doctors objected by filing a peremptory exception of prescription which the district court granted.
The Supreme Court granted certiorari. On rehearing and after examining the legislative intent of the statute, the Court explained that La. R.S. 9:5628 “cannot be examined alone, but must be interpreted in conjunction with the provisions of the Medical Malpractice Act, codified in La. R.S. 40:1299.41, et seq.” Id. p. 15, 989 So.2d at 61. Because the Act prohibits claimants from filing a lawsuit against qualified healthcare providers before presenting the complaint to a medical review panel, “[t]he legislature ... took special cognizance of the need to fully protect plaintiffs from the detrimental effect of liberative prescription” and “provide[d] for suspension of the time within which suit must be filed during the pendency of the review process and for ninety days following notification to the claimant of his or her attorney of the panel opinion.” Id. (citing LeBreton, 97-2221 p. 10, 714 So.2d at 1230-1231; La. R.S. 40:1299.47(A)(2)(a) and (c)). It recognized that the “Medical Malpractice Act is replete with provisions respecting the operation and effect of this suspension.” Id.
| nThe Court ultimately concluded that it is this suspension that makes Section 5628’s three-year deadline prescriptive, rather than peremptive, in nature. It reasoned:
Suspension, as we have explained, applies only to prescription; a peremptive period, by definition, is not subject to interruption, suspension, or renunciation. LSA-CC art. 3461; Hebert [v. Doctors Memorial Hospital, 486 So.2d 717, 723 (La.1986)] 486 So.2d at 723. To suggest that the language of LSA-R.S. 9:5628 and, in particular, the use of the word “shall,” indicates an intent to establish a peremptive period would be to render the provisions of the Medical Malpractice Act relative to suspension *683 meaningless, a result we cannot condone.
Borel, pp. 15-16, 989 So.2d at 61-62.
After determining that the three-year deadline was, in fact, a prescriptive period, the Court next examined whether the plaintiffs claims were properly dismissed, or whether the “discovery rule” embodied in the contra non valentem type exception to prescription[10] operated to allow the plaintiffs claims against the doctors to relate back to the filing date of the original claim. It explained:
Relying on the rules of statutory construction, ... although statutes dealing with the same subject matter should be harmonized if possible, where there is a conflict, the statute specifically directed to the matter at issue must prevail as an exception to the statute more general in character.
Borel, p. 24, 989 So.2d at 66 (citing LeBreton, 97-2221 p. 7, 714 So.2d at 1229). The Supreme Court further reasoned that the Medical Malpractice Act’s 90-day suspension period was enacted to protect plaintiffs from the potentially detrimental 112effect of liberative prescription that could occur by requiring plaintiffs to present their claim to a panel first.[11] “Thus, considering the doctrinal underpinning for the existence of the rules of suspension, it is evident that there is no need for the general rules of interruption of prescription to combine with suspension to syner-gistically benefit the plaintiff.” Id., p. 25, 989 So.2d at 67 (quoting LeBreton, 97-2221 pp. 9-10, 714 So.2d at 1230).
Based on this analysis, the Supreme Court concluded that only the more specific suspension provisions of the Medical Malpractice Act apply to medical malpractice claims — to the exclusion of more general provisions such as contra non valen-tem and La. C.C. art. 2324, which allow for the interruption of prescription against joint tortfeasors. Borel, p. 28, 989 So.2d at 69.

Warren v. Louisiana Medical Mutual Ins. Co.

The Supreme Court revisited the prescriptive nature of La. R.S. 9:5628’s three-year deadline in Warren, supra. In Warren, at issue was whether or not a new plaintiff could be added as a party more than three years after the death of a patient in a medical malpractice case. On rehearing the Supreme Court found the newly added party’s claims to be prescribed.
Warren was a wrongful death action initially filed by the husband and daughter of a patient who allegedly died from substandard medical care; the PCF claim and original district court petition were both *684 filed within the delays set forth by the Medical Malpractice Act. Warren, 21 So.3d at 203. More than three years after the patient’s death, the plaintiffs attempted to amend their petition to add the decedent’s other daughter who was aware of the claim but had previously decided not to join in. Id. The defendants filed an exception of prescription as to the 11ssecond daughter’s claim. Id. The district court overruled the exception, and the court of appeal denied defendants’ writ application.[12] After carefully examining each side’s position, on rehearing, the Supreme Court reversed the judgment of the trial court.
The Warren Court adopted the reasoning in Borel and the cases cited therein to reach its conclusion that the relation back principles of La. C.C.P art. 1153 do not interrupt prescription in cases brought pursuant to the Medical Malpractice Act. Warren, 21 So.3d at 207. The Court stated:
Because medical malpractice actions are governed by the specific provisions of the Act regarding prescription and suspension of prescription, under Borel, we find that any general codal article which conflicts with these provisions may not be applied to such actions in the absence of specific legislative authorization in the Act. The Act has no rules allowing relation back of pleadings for medical malpractice claims. The application of Article 1153 would permit the adding of an [sic] plaintiff subsequent to the expiration of the three-year period provided for in La. R.S. 9:5628, and would read out of the statute the prescription and suspension period provisions by La. R.S. 9:5628 and La. R.S. 40:1299.47; therefore, La. C.C.P. art. 1153 may not be applied to the medical malpractice action under the reasoning of LeBreton and Borel.
Warren, 21 So.3d at 207-208.
For the reasons set forth in the Warren and Borel, this Court finds that Ms. Santiago’s claims filed in her supplemental and amending petitions against Dr. Robert L. Barrack, Dr. Scott Montgomery, Dr. Michael Adams, Dr. Sujal Shah, Dr. Brian Rogers, and the Administrators are now prescribed as a matter of law. Because the procedural posture of the plaintiffs claims against Dr. Barrack differs from that of the plaintiffs claims against the remaining defendants, this Court will address prescription as it pertains to the claims against him separately.
| uClaims Against Dr. Barrack
As to her claims against Dr. Barrack, Ms. Santiago initially complied with the requirements of the Medical Malpractice Act. She filed a timely complaint with the PCF requesting that her claims against him be reviewed by a medical review panel in accordance with La. R.S. 40:1299.47(A)(1). This PCF complaint alleged that Dr. Barrack, the hospital, and an unidentified x-ráy technician, were liable for dropping and/or improperly restraining Ms. Santiago. The Medical Review Panel reviewed the medical evidence and concluded that there was no evidence to support the allegation that Dr. Barrack breached the standard of care as charged in the PCF complaint. Within ninety days of receiving notice of the medical review panel’s opinion, the plaintiff filed a timely petition for damages in district court as required by La. R.S. 40:1299.47(A)(2)(a).
In her original PCF complaint and petition for damages, Ms. Santiago alleged only that Dr. Barrack was liable for causing her to fall, either by dropping her or *685 failing to restrain her. The petition stated: “Luz Santiago was dropped or improperly restrained thereby causing and or [sic] allowing her to fall to the floor.” It further stated: “The defendants were at fault in negligently dropping Luz Santiago.” The original petition did not allege that Dr. Barrack did anything else wrong.
The Second Supplemental and Amending Petition, however, omitted all allegations regarding Dr. Barrack’s responsibility for Ms. Santiago’s fall.[13] Instead, this petition named two nurses and two radio-logic technologists as defendants and alleged that they alone were responsible for the plaintiffs fall. [ 15This petition then added completely new allegations against Dr. Barrack, which all involved purported acts of negligence by Dr. Barrack following the alleged fall. In particular, it alleged that Dr. Barrack was liable for failing to diagnose the plaintiffs left femur fracture, for failing to prevent further harm to plaintiff, for falsifying a report, and for being incompetent and engaging in unprofessional conduct. The supplemental PCF complaint also contained the new allegations set forth in this second amended petition.
Appellees argue that the trial court did not err in dismissing all of the plaintiffs claims against Dr. Barrack as time-barred. Specifically, they contend that that the later-filed allegations against Dr. Barrack had the effect of clarifying the parties allegedly responsible for the plaintiffs fall. According to Appellees, because the petition was amended to remove all allegations that Dr. Barrack was responsible for the fall, then it is as if no allegations were made against him in the original petition. Appellees further argue that the amended claims were properly dismissed as untimely and/or because there were no prior claims that the amended petition could relate back to.
First, we must determine whether the trial court properly dismissed the claims against Dr. Barrack that were set forth in the plaintiffs original PCF complaint and petition for damages. We must then determine whether or not the amended claims against Dr. Barrack were properly dismissed. For the reasons discussed below, we reverse the trial court’s dismissal of the plaintiffs original claims against Dr. Barrack. We further affirm the dismissal of the amended claims filed in the supplemental and amended petitions against Dr. Barrack on the grounds of prescription, rather than peremption.
11fiLouisiana courts have long acknowledged that the wording used in an amending petition may have the effect of superseding and replacing the allegations in an original petition. For instance, in Bologna Bros. v. Stephens, 23 So.2d 645, 646 (La.App. 2 Cir.1945), a Louisiana appellate court relied on the language, ‘“Plaintiffs supplement and amend their original and supplemental petitions ... to read as follows,’”[14] to conclude that the plaintiffs abandoned their original claim. In Coleman’s Heirs v. Holmes’ Heirs, 147 So.2d 752 (La.App. 3 Cir.1962), the Court held that where plaintiffs filed a supplemental petition seeking relief pursuant a cause of action which conflicted with the cause of action originally filed, and where the supplemental petition did not expressly retain or abandon the prayers in the previous petition, it was presumed that the previous petition was abandoned. Id. at 753. In so *686 ruling, the Court relied on 71 C.J.S. Verbo, Pleadings 321, pp. 716-717, which stated:
An amendment which is complete in itself and does not refer to, or adopt, the prior pleadings, ordinarily supersedes it and the prior pleading ceases to be a part of the record for most purposes, and has been held to be in effect abandoned and, likewise, has been held to be in effect withdrawn as to all matters not restated, and to become functus officio. On the other hand, an amended pleading does not supersede the original pleading where it is evident that it is not designed as a substitute therefor or intended to take its place, as where it refers to its allegations, or expressly reaffirms them, or merely elaborates certain of them, or merely augments the original pleading by additional allegations, and in such cases the original pleading and the amendment are to be construed together.
See also, Ford v. Louisiana & A. Ry. Co., 196 So. 403, 406 (La.App. 2 Cir.1940) (Court held allegations in supplemental petition superseded clearer allegations in original petition).[15]
In Thomas v. Lusk, 13 La.Ann. 277, p. 3 (La.1858), the Supreme Court, in dealing with an amendment seeking an inconsistent demand, stated:
We are of the opinion that the filing of the amended petition was not such an absolute waiver of plaintiffs’ original demand as to put his cause of action out of court, even if it be conceded that the demands were inconsistent. The plaintiffs certainly could not be in a worse condition after they filed their amendment than they would have been if they had embraced both demands in their original petition. In that case they would have had the right to elect which cause of action they would prosecute.
(Cited in Montgomery v. American Motorists Insurance Co., 242 So.2d 45, 48 (La.App. 2 Cir.1970)). Similarly the Court stated in Self v. Great Atlantic & Pacific Tea Co., 178 La. 240, 254, 151 So. 193, 197 (La.1933):
It is well-settled that, when a supplemental petition, or an amendment of a petition, has been properly allowed, it forms a part of the original petition, the same as if there had been no need for the amendment, and (except with regard to questions of prescription) the plaintiffs rights are the same then as if the subject-matter of the amendment had been embodied in the original petition. (Emphasis added)
In the present case, the plaintiff, in her original PCF complaint and petition for damages, alleged only fall-related claims against Dr. Barrack. She amended her petition, however, to delete all references to Dr. Barrack’s responsibility for the fall. Without more, the trial court dismissal of the plaintiffs original claims against Dr. Barrack would have been proper as superseded by the plain language of the amended petition. We find, however, that the amended language must | isnecessarily be read in conjunction with the “catch-all” language of the plaintiffs amended petition, which states:
The plaintiffs [sic] hereby adopt and incorporate by reference all allegations contained in the original and First Supplemental and Amending Petition for Damages as if copied here in extenso.
This language constituted a pronouncement of the plaintiffs intent to preserve *687 the allegations made against Dr. Barrack in her original petition. Coleman’s Heirs, 147 So.2d at 753. In addition, accepting the defendant’s position (that the amendment has the effect of negating the plaintiffs prior allegations) would have the undesired effect of placing the plaintiff in a worse condition than she was in prior to filing her amendment. Thomas, supra. As a result, we find that the trial court erred in dismissing the plaintiffs original fall-related claims against Dr. Barrack.
Lastly, we find that the trial court did not err in dismissing the plaintiffs amended claims against Dr. Barrack. Unlike the plaintiffs original claims, her amended claims against Dr. Barrack were filed more than three years after the alleged malpractice and are therefore untimely. Her argument that these claims relate back to the timely filed claims under La. C.C. P. art. 1153 is without merit.[16] Applying the principles set forth in Warren, 21 So.3d 186 (on reh’g), this court finds that the relation back principles of Article 1153 cannot apply to the plaintiffs wholly new claims against Dr. Barrack. The only claims that were timely filed against Dr. Barrack are the original claims relating to his alleged responsibility for the plaintiffs fall. Because the plaintiff failed to amend her petition within the delays allowed by La. R.S. 9:5628, her amended claims are now prescribed.
| ^(Accordingly, with regard to plaintiffs amended claims against Dr. Barrack, we amend the trial court’s judgment solely with regard to the reasons for the dismissal. The plaintiffs amended claims against Dr. Barrack should have been dismissed on the grounds of prescription, rather than peremption, as set forth in Borel, supra and Warren, supra.

Claims Against Newly Added Doctors

Ms. Santiago did not name Dr. Montgomery, Dr. Adams, Dr. Shah, and Dr. Rogers, as defendants until she filed her Second Supplemental and Amending Petition for Damages on May 14, 2007— well over three years after the alleged April 2003 fall.[17] She does not allege that these doctors caused the plaintiffs fall, but that they (like Dr. Barrack) are liable for various acts of malpractice that occurred after the fall, including failing to report the fall and alleged injuries, failing to diagnose a left femur fracture, and falsifying an x-ray report. Because these are wholly new allegations of medical malpractice against wholly new defendants added more than three years after the alleged malpractice occurred, we find that the trial court did not err in dismissing the plaintiffs claims against the four new doctors with prejudice; however, the claims should have been dismissed as prescribed rather than perempted. Warren, supra, 21 So.3d 186.
Ms. Santiago’s supplemental PCF claim against the doctors was also properly dismissed with prejudice. Although plaintiff attempted to remedy procedural defects in her claims against the four new doctors by voluntarily dismissing the district court action and filing a “supplemental” complaint with the PCF, this action was futile because the alleged malpractice had occurred more than 12nfour years earlier. Pursuant to La. R.S. 9:5628(A), Ms. Santiago had three years to file their claims against the doctors; this necessarily encompassed the filing of a timely PCF *688 complaint against the doctors. La. R.S. 40:1299.47(B)(l)(a)(i). Because no PCF complaint was filed against these doctors within three years, prescription has now tolled. The Medical Malpractice Act states:
A health care provider, against whom a claim has been filed under the provisions of this Part, may raise peremptory exceptions of no right of action pursuant to Code of Civil Procedure Article 927(6) or any exception or defenses available pursuant to R.S. 9:5628 in a court of competent jurisdiction and proper venue at any time without need for completion of the review process by the medical review panel.
La. R.S. 40:1299.47(B)(2)(a). Accordingly, the trial court did not err in dismissing the Ms. Santiago’s supplemental PCF complaint as untimely.

Claims Against Administrators

Like the newly added doctors, Administrators was not named as a defendant until the plaintiff filed her Second Supplemental and Amending Petition for Damages.[18] In that petition, Ms. Santiago claimed that Administrators was liable in its capacity as the employer of Drs. Barrack, Montgomery, Adams, Shah, and Rogers under the theory of respondeat superi- or. Prior to that time, the plaintiff had named Tulane University Hospital and Clinic, and then University Healthcare System, L.C., as a defendant employer. Because Administrators was not substituted as a defendant until more the three years after the alleged malpractice of the physicians occurred, in violation La. R.S. 9:5628, the plaintiffs claims against Administrators are also now prescribed.
|g1DECREE
In conclusion, for the reasons expressed herein, we find that the trial court erred in dismissing Ms. Santiago’s original claims against Dr. Robert L. Barrack as set forth in the Petition for Damages filed on July 21, 2006; therefore, that decision is hereby reversed.
We further find that Ms. Santiago’s claims against Dr. Barrack, Dr. Scott Montgomery, Dr. Michael Adams, Dr. Su-jal Shah, Dr. Brian Rogers, and their employer, the Administrators of the Tulane Educational Fund, as set forth in the Second Amended and Supplemental Petition for Damages, and in Plaintiffs Supplemental PCF Complaint, are time-barred because they were filed more than three years after the date of the alleged malpractice in violation of La. R.S. 9:5628. The judgment of the district court dismissing the claims, with prejudice, is amended to show the plaintiffs claims dismissed on the grounds or prescription, rather than peremption. In all other respects, the judgment of the trial court is affirmed.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED

. Hereinafter referred to as “original PCF complaint.”

. It appears from the record before us that the medical review panel issued findings regarding Administrators’ responsibility for the plaintiff’s fall in spite of the fact that Administrators was not a named defendant in the original PCF complaint. The opinion stated in part:
All the panelists find that the evidence does not support the conclusion that the defendants, The Administrators of the Tulane Educational Fund, d/b/a Tulane University Health Sciences Center, (Formerly Tulane University Medical Center) and Dr. Barrack failed to meet the standard of care as charged in the complaint.
It is unclear to this Court whether of if the plaintiff properly amended her original PCF claim to add Administrators as a party to the medical review panel proceedings prior to the time that the panel rendered its opinion; however in their responsive brief filed with this Court, Appellees assert that the plaintiff did not. See, La. R.S. 40:1299.47(A)(1)(b) (outlining minimum requirements to establish a PCF claim against a qualified healthcare provider) and La. R.S. 40:1299.47(A)(1)(c) (establishing a filing fee of one hundred dollars per named defendant). Because there is no dispute that Administrators was not identified as a defendant in the district court proceedings until the plaintiff filed her second amended petition more than three years after the alleged malpractice (as will be discussed herein), there is no reason for this Court to address the effect of the panel’s opinion, if any, on the plaintiff’s claims against Administrators.

. Presumably, the plaintiff alleged injury to her femur based on the findings of the medical review panel; however, in their opinion, the panel noted a fracture to the plaintiff's left femur, rather than her right one.

. In its Answer to the plaintiff's first supplemental and amending petition, University Healthcare System, L.C. identified itself as "University Healthcare System, L.C. d/b/a Tulane University Hospital & Clinic.” We make no finding as to whether TUHC was properly named prior to this amendment as the claims against TUHC are not before us on appeal.

.Plaintiff's first amended petition also named HCA Health Services of Louisiana, Inc., ABC Insurance Company, and DEF Insurance Company as additional defendants. Those parties are not before us on appeal.

. The PCF ultimately assigned a new case number to this complaint because the original PCF case was closed. The original case filed with the PCF concluded at the point when the medical review panel rendered a decision in that matter. See, e.g. Abel v. North Oaks Medical Center, 09-1186, p. 6, (La.App. 1 Cir. 2/12/10), 35 So.3d 1109, 1113 (holding that once a medical review panel renders an opinion in a case, "the exclusive manner available to plaintiffs to have their new malpractice claims submitted to a medical review panel is by the claimant filing a new request for review to the division of administration as provided in La. R.S. 40:1299.47.")

. In December of 2007, the nurses and radio-logic technologists (Larry Peschong, R.T., Brad Stringer, R.T., Rosalie Varnado, R.N. and Craig Jones, R.N.) filed a Peremptory Exception of Peremption and Alternatively, Motion for Summary Judgment challenging the timeliness of the plaintiff's Second PCF Complaint and district court petitions. These defendants argued that the medical malpractice claims against them should be dismissed under La. R.S. 9:5628 because they were not named as defendants in any action filed by the plaintiff until more than four years after the alleged fall. The trial court granted the Exception of Peremption on March 19, 2008, and dismissed all PCF and district court claims against these defendants. The plaintiff did not appeal their dismissal.

. La. R.S. 40:1299.47(B)(l)(a)(i) states: "No action against a health care provider covered by this Part, or his insurer, may be commenced in any court before the claimant's proposed complaint has been presented to a medical review panel".

. La. R.S. 40:1299.47(A)(2)(a) states in pertinent part:
The filing of the request for a review of a claim shall suspend the time within which suit must be instituted, in accordance with this Part, until ninety days following notification, by certified mail ... to the claimant or his attorney of the issuance of the opinion by the medical review panel.... The filing of a request for review of a claim shall suspend the running of prescription against all joint and solidary obligors, and all joint tortfeasors, including but not limited to health care providers, both qualified and not qualified, to the same extent that prescription is suspended against the party or parties that are the subject of the request for review.

. Contra non valentem is a judicially created exception to the general rules of prescription that operates to suspend prescription when the plaintiff is prevented from acting under one of four scenarios:
(1) Where there was some legal cause which prevented the courts or their officers ■ from acting or taking cognizance of the plaintiff’s action; or
(2) Where there was some condition or matter coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting;
(3) Where the debtor himself has done some act effectively to prevent the creditor from availing himself of his cause of action; and
(4)Where some cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant.
Hillman v. Akins, 631 So.2d 1 (La.1994); Rajnowski v. St. Patrick's Hospital, 564 So.2d 671, 674 (La.1990); Corsey v. State, through Dept. of Corrections, 375 So.2d 1319, 1321-1322 (La.1979).

. Borel, p. 25, 989 So.2d at 67 (citing LeBreton, 97-2221 at 9-10, 714 So.2d at 1230).

. The Louisiana First Circuit Court of Appeal relied on Giroir v. South La. Med. Ctr. Div. of Hospitals, 475 So.2d 1040 (La.1985) and Article 1153 in denying writs.

. The plaintiffs First Supplemental and Amending Petition added defendants who are not before us on appeal; there were no other substantive changes regarding the allegations against Dr. Barrack in the First Supplemental and Amending Petition for Damages.

. Emphasis added.

. Compare, Williamson v. Hospital Service District No. 1 of Jefferson, 04-0451 (La.12/1/04), 888 So.2d 782 (Although plaintiff’s counsel acknowledged that original pleadings were abandoned by virtue of amendment, appellate court should have reviewed plaintiff's petition as supplemented and amended without reference to allegations in original petition that were substituted or abandoned).

. Plaintiff also cites Masson v. Champion Insurance Company, 591 So.2d 399, 402 (La.App. 4th Cir.1991), in support of her position.

. We note that the filing of a petition does not suspend or interrupt prescription in a medical malpractice action. Only a timely request for a medical review panel suspends prescription. Borel, pp. 26-27, 989 So.2d at 68-69.

. See footnote 17, supra.