Judge Paula A. Brown
This matter involves a medical malpractice action. Plaintiff/Appellant, Mariah Benoit ("Ms. Benoit"), appeals the district court's judgment which granted the exception of prescription filed on behalf of Defendants/Appellees, Leslie K. Greco, M.D. ("Dr. Greco") and Nikki Clary, PA ("PA Clary). For the reasons that follow, we reverse the judgment.
FACTUAL AND PROCEDURAL HISTORY
On November 13, 2014, Ms. Benoit filed a formal complaint, pursuant to La. R.S. 40:1231.8[1] to convene a Medical Review Panel ("MRP").[2] Ms. Benoit named Iberia Medical Center, Pediatric Group of Acadiana, Women's & Children's Hospital in Lafayette and Children's Hospital in New Orleans as defendants (the "Original Defendants"). Ms. Benoit alleged she sustained a "compression injury that developed *47 into an open sore" when the Original Defendants placed splints/cast over her broken foot too tightly. The alleged malpractice occurred from November 27, 2013 through December 10, 2013.
On January 21, 2015, Children's Hospital filed a petition to institute discovery in Civil District Court for the Parish of Orleans.[3] Almost a year later, on January 15, 2016, Children's Hospital filed an unopposed motion to extend the life of the MRP. The parties noted in the motion that the MRP was set to expire on February 25, 2016, panel members had not met, and discovery was still on-going. The district court granted the motion, extending the life of the MRP until February 25, 2017.
Before the life of the MRP expired, on February 9, 2017, Ms. Benoit amended her MRP complaint to add Dr. Greco and PA Clary (collectively, "Defendants"), amongst others, as additional defendants to the pending complaint.[4] The amended complaint asserted that on November 27, 2013, Dr. Greco was the treating physician and PA Clary placed the cast on Plaintiff's leg too tightly, causing the injuries complained of.[5]
On April 4, 2017, Defendants filed an exception of prescription, arguing that on the face of the amended complaint, Ms. Benoit failed to timely convene a MRP against them within the three year prescriptive period pursuant to La. R.S. 9:5628(A). Defendants maintained that Ms. Benoit's amended complaint, which was filed against Defendants more than three years after the date of the alleged malpractice, had prescribed and should be dismissed with prejudice.
Ms. Benoit, relying on Borel v. Young ,[6] countered that the three-year time period for filing a medical malpractice action was prescriptive, rather than preemptive. Ms. Benoit maintained that her amended complaint against Defendants had not prescribed because Defendants were jointly and solidarily liable with Original Defendants who were named in the original, timely filed MRP complaint. Ms. Benoit further argued that, pursuant to La. R.S. 40:1231.8 (A)(2)(a), because the MRP had not rendered a decision on the merits at the time the amended MRP was filed, the prescriptive period had tolled.
After the argument of counsel, on August 4, 2017, the district court sustained *48 Defendants' exception of prescription, reasoning that: "I think the law is clear. You've got to file [a request for a MRP], at the absolute latest, in three years." The written judgment of the district court dismissed Ms. Benoit's claims against Defendants with prejudice, and ordered the Louisiana Patient's Compensation Fund to dismiss Defendants from the pending medical review panel proceeding captioned Mariah Benoit, et al. v. Iberia Medical Center, et al ., bearing file number 2014-01224.
Thereafter, Ms. Benoit filed a timely motion for a suspensive appeal.
SUBJECT MATTER JURISDICTION
Before we review the merits of Ms. Benoit's appeal, we must first address whether this case is properly before this Court. Appellate courts have a duty to determine, sua sponte , whether subject matter jurisdiction exists, even when the parties do not raise the issue. Moon v. City of New Orleans , 2015-1092, 2015-1093, p. 5 (La. App. 4 Cir. 3/16/16), 190 So.3d 422, 425. Appellate courts cannot consider the merits of an appeal unless our jurisdiction is properly invoked by a valid final judgment. Bd. of Supervisors of Louisiana State Univ. v. Mid City Holdings, L.L.C. , 2014-0506, p. 2 (La. App. 4 Cir. 10/15/14), 151 So.3d 908, 910. The prerequisites of a final judgment are discussed in Tsegaye v. City of New Orleans , 2015-0676, p. 3 (La. App. 4 Cir. 12/18/15), 183 So.3d 705, 710, as follows:
For a judgment to be "a valid final judgment," it must contain "decretal language." Mid City Holdings, L.L.C. , 2014-0506, p. 2, 151 So.3d at 910. The absence of necessary decretal language means that the judgment is not final and appealable. Id. , 2014-0506, p. 3, 151 So.3d at 910. Importantly, for the language of a judgment to be considered "decretal," it "must name the party in favor of whom the ruling is ordered, the party against whom the ruling is ordered, and the relief that is granted or denied.
La. C.C.P. art. 1918 provides that "[a] final judgment shall be identified as such by appropriate language." Established jurisprudence requires that a valid judgment be precise, definite and certain. Input/Output Marine v. Greatbatch Techs., Inc. , 2010-0477, p. 12 (La. App. 5 Cir. 10/29/10), 52 So.3d 909, 915. "The decree alone indicates the decision. The result decreed must be spelled out in lucid, unmistakable language. The quality of definiteness is essential to a proper judgment." Input/Output Marine , 2010-0477, p. 13, 52 So.3d at 916 (footnote and internal citations omitted).
In the present matter, the judgment lacks the requisite decretal language because it does not specifically name the party against whom the ruling is ordered. The judgment merely states that "plaintiffs' claim of malpractice against defendants is dismissed.... " The plaintiffs are not readily identifiable from the judgment or from the case caption of the litigation filed in the district court. The judgment also creates ambiguity in identifying the defendants in whose favor the judgment was rendered as the underlying MRP complaint involves other defendants who were not parties to this exception. In the absence of said decretal language, the August 4, 2017 judgment cannot be considered a final, appealable judgment over which this Court can exercise its appellate jurisdiction. Tsegaye , 2015-0676, p. 3, 183 So.2d at 710.
Although we find Ms. Benoit is not entitled to appellate review as a matter of right, nonetheless, this Court has the authority to invoke our discretionary supervisory jurisdiction. See *49 Bd. of Supervisors , 2014-506, pp. 2-3, 151 So.3d at 910. See also La. C.C.P. art. 2201.[7] Here, Ms. Benoit's motion for appeal was filed within thirty days of rendition of the judgment; thus, it was filed within the time period for the filing of an application for supervisory writs. Accordingly, this Court elects to exercise its discretionary jurisdiction and convert Ms. Benoit's appeal to a writ application, which we grant.
We now turn to address the merits of Ms. Benoit's claim.
STANDARD OF REVIEW
A judgment granting the peremptory exception of prescription is generally reviewed under the de novo standard of review because the exception raises a legal question. Scott v. Zaheri , 2014-0726, p. 8 (La. App. 4 Cir. 12/3/14), 157 So.3d 779, 785. In a case involving no dispute over material facts, but only the determination of a legal issue, such as the present matter, the de novo review standard is applied, under which the district court's legal conclusions are not entitled to deference. Felix v. Safeway Ins. Co. , 2015-0701, p. 6 (La. App. 4 Cir. 12/16/15), 183 So.3d 627, 632.
ASSIGNMENT OF ERROR
Ms. Benoit's sole assignment of error is whether the district court erred in sustaining Defendants' exception of prescription.
DISCUSSION
Ms. Benoit raises the same arguments here as she did in the district court: (1) that the three-year time period for filing a medical malpractice action as contemplated in La. R.S. 9:5628(A) is prescriptive, rather than preemptive; (2) that pursuant to La. R.S. 40:1231.8 (A)(2)(a), the prescriptive period was tolled because the MRP had not rendered a decision at the time the amended complaint was filed; (3) that the original MRP complaint, timely filed on November 13, 2014, interrupted prescription as to the joint and solidary Defendants added to the complaint by amendment on February 6, 2017.
In opposition, Defendants contend that the applicable statute in determining prescription in a medical malpractice action is governed by La. R.S. 9:5628(A), which imposes a strict deadline of three years in which to bring a medical malpractice claim, and no statutory or jurisprudential authority exists to suspend or interrupt prescription beyond the three-year period.
La. R.S. 9:5628(A) provides in pertinent part as follows:
No action for damages for injury or death against any physician ... whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission or neglect, or within one year from the date of discovery of the alleged act, omission or neglect, however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission or neglect.
Pertinent provisions of the Louisiana Medical Malpractice Act ("LMMA") applicable to consideration of claims before the MRP include the following:
La. R.S. 40:1231.8 Medical review panel.
*50 A. (1)(a) All malpractice claims against health care providers covered by this Part, other than claims validly agreed for submission to a lawfully binding arbitration procedure, shall be reviewed by a medical review panel established as hereinafter provided for in this Section.
* * *
(2)(a) The filing of the request for a review of a claim shall suspend the time within which suit must be instituted, in accordance with this Part, until ninety days following notification, by certified mail, as provided in Subsection J of this Section, to the claimant or his attorney of the issuance of the opinion by the medical review panel, in the case of those health care providers covered by this Part, or in the case of a health care provider against whom a claim has been filed under the provisions of this Part, but who has not qualified under this Part, until ninety days following notification by certified mail to the claimant or his attorney by the board that the health care provider is not covered by this Part. The filing of a request for review of a claim shall suspend the running of prescription against all joint and solidary obligors, and all joint tortfeasors , including but not limited to health care providers, both qualified and not qualified, to the same extent that prescription is suspended against the party or parties that are the subject of the request for review. (emphasis added)
The Supreme Court conclusively established in LeBreton v. Rabito , 1997-2221, p. 9 (La. 7/8/98), 714 So.2d 1226, 1230, that the LMMA applies to the exclusion of the general codal provisions found in our Louisiana Civil Code in determining the suspension or interruption of prescription in medical malpractice actions. In LeBreton , the decedent's daughter simultaneously filed a wrongful death claim against his physicians in Civil District Court and a complaint before the MRP. The physicians filed an exception of prematurity, alleging that the only viable action was before the MRP. The district court denied the physicians' prematurity exception and the appellate court denied writs, allowing the daughter's district court action to continue. In granting the physicians' writ application, the Supreme Court noted that the filing of a medical malpractice claim with a medical review panel triggers the suspension of prescription as provided by the LMMA, rather than the interruption of the liberative prescriptive period provided in the Civil Code. LeBreton , 1997-2221 at p. 9, 714 So.2d at 1230. The Court reasoned as follows:
[I]t is evident that the Louisiana Medical Malpractice Act took cognizance of the need to suspend prescription and fully protects plaintiffs who would otherwise suffer the detrimental effect of liberative prescription. Because the Medical Malpractice Act prohibits the filing of a medical malpractice claim against a qualified health care provider prior to panel review, the act specifies that the filing of a request for review before a panel suspends prescription. La. R.S. 40:[1231.8](A)(2)(a). Moreover, as provided by statute, the filing of the complaint prevents prescription from lapsing during the pendency of the review process and further suspends prescription from the time of filing until ninety-days following notification to the claimant or his attorney of the panel opinion. Id. After reviewing these special provisions, it is clear that the legislature has equitably provided for suspension to aid the plaintiff in the medical malpractice arena who is prevented by law from the outset from filing suit against the qualified health care provider.... Thus, considering the doctrinal underpinnings for the existence of the rules of suspension, it is *51 evident that there is no need for the general rules of interruption of prescription to combine with suspension to synergistically benefit the plaintiff.
LeBreton , 1997-2221, p. 10, 714 So.2d at 1230-31.
In Borel , supra , the Supreme Court was faced with a similar issue when it considered whether a timely filed malpractice complaint against a hospital interrupted the three-year prescriptive period against an alleged joint tortfeasor/physician, where the plaintiffs filed suit more than three years after the acts of medical malpractice. The Borel plaintiffs filed a MRP complaint on August 14, 2000, against the hospital and the physician in connection with their decedent's death on May 23, 2000. They were notified of the MRP's decision on January 22, 2002. Within ninety days, on March 28, 2002, the Borel plaintiffs filed suit against the hospital; however, they did not file suit against the physician. They waited until May 15, 2005 to file a separate lawsuit against the physician, contending that he was jointly, severally, and in solido liable with the hospital for the negligent care that resulted in the decedent's death.[8] The physician and his insurer filed an exception of prescription, which was sustained by the district court.
In applying the provisions of La. R.S. 40:1231.8(A)(2)(a) to the facts of Borel , the Court acknowledged that medical malpractice actions are governed by special legislation as codified in the LMMA; as such, the specific provisions of the LMMA regarding suspension of prescription apply to the exclusion of the general code articles on interruption of prescription. 2007-0419, p. 25, 989 So.2d at 67. Moreover, the Court recognized that the time period for filing a medical malpractice action is prescriptive, rather than preemptive.[9] Id. , 2007-0419, pp. 28-29, 989 So.2d at 69. The Borel Court explained that during the pendency of the panel proceedings, prescription was suspended as to all joint and solidary obligors. Thus, the Borel plaintiffs had until ninety days after notice of the panel decision, plus the remainder of the one-year prescriptive period that was unused at the time the request for the MRP was filed, in which to timely file suit.[10] Because the Borel plaintiffs failed to file suit against the physician until after the expiration of these time periods, the Court found that the district court properly sustained the peremptory exception of prescription. Id. , 2007-0419, p. 28, 989 So.2d at 69.
However, the facts of the present matter are distinguishable from Borel . Here, the medical review panel has not rendered a decision. Therefore, prescription is suspended, at a minimum, for a ninety-day period following notice, via certified mail, of the MRP decision pursuant to La. R.S. 40:1231.8(A)(2)(a), provided the newly added defendants-Dr. Greco and PA Clary-are considered joint and solidary obligors.
Defendants contend if this Court interprets La. R.S. 40:1231.8(A)(2)(a) to mean prescription is interrupted while a MRP decision is pending, allowing for an amendment of joint tortfeasors, which we do, Ms. Benoit failed to present any evidence at the hearing on the exception to *52 prove that they were joint and solidary obligors with Original Defendants named in the original MRP complaint.
In Younger v. Marshall Industries, Inc. , 618 So.2d 866, 871 (La. 1993), the Supreme Court opined:
When no evidence is presented at the hearing on the exception, the objection of prescription must be decided upon the facts alleged in the petition and the second supplemental petition, and all the allegations therein are accepted as true. Tranum v. Hebert , 581 So.2d 1023, 1026 (La. App. 1st Cir.), writ denied , 584 So.2d 1169 (1991). Where the allegations in the petition have not been controverted in the hearing on the exception, a court must look to see whether the alleged facts, if accepted as true, are sufficient on their face to establish that the timely sued defendant and the untimely sued defendants are solidarily liable. If so, then plaintiff has met his burden of proving an interruption of prescription based on solidary liability. Pearson v. Hartford Accident & Indemnity Co. , 281 So.2d 724 (La. 1973).
Upon examination of the original MRP complaint, Ms. Benoit requested that a MRP be convened for the follow reasons:
[T]to render an expert opinion on the treatment and/or lack of treatment rendered by Iberia Medical Center, Pediatric Group of Acadiana, Women's Children's Hospital, Children's Hospital and/or its employees and/or others for whom it is responsible as of November 27, 2013. Of particular concern is the fact that Maria Benoit had splints/cast placed over a broken foot to [sic] tight to where it caused a compression injury that developed into an open sore.
In the amended MRP complaint, Ms. Benoit alleges that on November 27, 2013, during a visit in the emergency room at Iberia Medical Center, Dr. Greco, the treating physician, and PA Clary improperly treated her when PA Clary placed a cast too tightly on Ms. Benoit's leg, resulting in the formation of a sore.
On the face of the original complaint and the amended complaint, the alleged facts, if accepted as true, are sufficient to establish that the timely sued Original Defendants and the "untimely" sued Defendants are jointly and solidarily liable. Accordingly, based on our de novo review, Ms. Benoit met her burden of proving that prescription was suspended as to Defendants based on joint and solidary liability.
CONCLUSION
When we apply the provisions of La. R.S. 1231.8(A)(2)(a) to the facts of this case, we find that Ms. Benoit's amended complaint adding Defendants as joint and solidary obligors was timely filed. Accordingly, we reverse the judgment and remand this matter to the district court for further proceedings consistent with this opinion.
APPEAL CONVERTED TO WRIT APPLICATION; WRIT GRANTED; JUDGMENT REVERSED AND REMANDED
LOVE, J., CONCURS IN PART; DISSENTS IN PART; AND ASSIGNS REASONS
LOVE, J., CONCURS IN PART; DISSENTS IN PART; AND ASSIGNS REASONS
I concur with the majority's decision to convert the present appeal to an application for supervisory review. However, I respectfully dissent from the majority's finding that prescription was suspended as to Ms. Benoit's amended MRP complaint.
The case sub judice centers around the interpretation of *53 La. R.S. 40:1231.8(A)(2)(a) in conjunction with La. R.S. 9:5628(A). "The function of statutory interpretation and the construction given to legislative acts rests with the judicial branch of the government." M.J. Farms, Ltd. v. Exxon Mobil Corp. , 07-2371, p. 12 (La. 7/1/08), 998 So.2d 16, 26, amended on reh'g (09/19/08). "[T]he paramount consideration in statutory interpretation is ascertainment of the legislative intent and the reason or reasons which prompted the Legislature to enact the law." Id. , 07-2371, p. 13, 998 So.2d at 27.
"When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature." La. C.C. art. 9. "When the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law." La. C.C. art. 10. "The words of a law must be given their generally prevailing meaning," whereas "[w]ords of art and technical terms must be given their technical meaning when the law involves a technical matter." La. C.C. art. 11. "When the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole." La. C.C. art. 12. "Laws on the same subject matter must be interpreted in reference to each other."
"The starting point in the interpretation of any statute is the language of the statute itself." Id. , 07-2371, p. 13, 998 So.2d at 27. La. C.C. art. 13. § 5628 provides that:
No action for damages for injury or death against any physician, chiropractor, nurse, licensed midwife practitioner, dentist, psychologist, optometrist, hospital or nursing home duly licensed under the laws of this state, or community blood center or tissue bank as defined in R.S. 40:1231.1(A), whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect . (Emphasis added).
§ 1231.8(A)(2)(a) states:
The filing of the request for a review of a claim shall suspend the time within which suit must be instituted , in accordance with this Part, until ninety days following notification, by certified mail, as provided in Subsection J of this Section, to the claimant or his attorney of the issuance of the opinion by the medical review panel, in the case of those health care providers covered by this Part, or in the case of a health care provider against whom a claim has been filed under the provisions of this Part, but who has not qualified under this Part, until ninety days following notification by certified mail to the claimant or his attorney by the board that the health care provider is not covered by this Part. The filing of a request for review of a claim shall suspend the running of prescription against all joint and solidary obligors , and all joint tortfeasors, including but not limited to health care providers, both qualified and not qualified, to the same extent that prescription is suspended against the party or parties that are the subject of the request for review. Filing a request for review of a malpractice claim as required by this Section with any agency or entity other than the division of administration *54 shall not suspend or interrupt the running of prescription. All requests for review of a malpractice claim identifying additional health care providers shall also be filed with the division of administration. (Emphasis added).
La. R.S. 40:1231.8(A)(2)(a) provides that prescription is suspended as to joint and solidary obligors for a minimum of 90 days following notice of the MRP decision. The majority interprets this to mean that prescription is suspended as to joint and solidary obligors, as to the MRP claims and lawsuits, until at least 90 days after notice of the MRP decision. Thus, because there is not yet an MRP decision in the present matter, unlike Borel , the majority finds that the prescriptive period has not tolled.
However, I interpret La. R.S. 40:1231.8(A)(2)(a) as the suspension of prescription regarding the filing of an actual lawsuit once the MRP renders a decision. See Ferrara v. Starmed Staffing, LP , 10-0589, p. 3 (La. App. 4 Cir. 10/6/10), 50 So.3d 861, 864 ("The filing of a request for review of a claim suspends the running of prescription against all joint and solidary obligors ... to the same extent that prescription is suspended against the party or parties that are the subject of the request for review."). See also Correro v. Caldwell , 49,778 (La. App. 2 Cir. 6/3/15), 166 So.3d 442 ("Thus, the filing of a claim with the MRP suspends prescription with regard to unnamed joint tortfeasors to the same extent as to those named in the request for review.").
Firstly, § 1231.8(A)(2)(a) provides that the filing of a claim suspends the prescriptive period for filing a suit . The Louisiana Legislature utilized the different terms for a reason. The "claim" refers to the complaint that goes before a MRP. A "suit" refers to the petition filed in the trial court after the MRP renders a decision. A medical malpractice plaintiff is required to file the MRP claim prior to filing a lawsuit in a trial court. If prescription was not suspended by the filing of the claim, then prescription would likely be tolled once the MRP issues a decision, precluding the plaintiff from filing a lawsuit. The Legislature included this phrase to protect the rights of the medical malpractice plaintiffs who are prevented from exercising their rights to file a lawsuit in the trial court. If the Legislature wanted to allow for the extended filing of claims, especially past the three-year limit contained in § 5628(A), then § 1231.8(A)(2)(a), the statute could provide that prescription was suspended for filing a suit or other claims. This interpretation does not detract from protecting the plaintiff because the plaintiff could file a MRP complaint against all interested parties within the confines of the three-year requirement contained in § 5628(A).[1]
Secondly, § 1231.8(A)(2)(a) provides that prescription is suspended as to joint and solidary obligors "to the same extent that prescription is suspended against the party or parties that are the subject to the request for review." The Legislature carefully worded this phrase to protect the plaintiff's rights against joint and solidary obligors, but limited the protection to the same as the parties already included in the MRP claims. "To the same extent" connotes that prescription is suspended as to joint and solidary obligors as to the period "within which suit must be instituted." Meaning, prescription is suspended as to joint and solidary obligors in regards to the filing of a lawsuit following the MRP decision. To find otherwise nullifies the need for the phrase "within which suit must be instituted."
*55 Thirdly, interpreting § 1231.8(A)(2)(a) for the premise that a MRP claim can be indefinitely amended pending the final MRP decision invalidates the three-year time period for the filing of medical malpractice claims contained in § 5628(A). The alleged medical malpractice in this matter occurred from the end of November 2013, through the first part of December 2013. The formal MRP complaint was filed on November 13, 2014. The amended MRP complaint was filed on February 9, 2017, which was over three years past the dates of the alleged malpractice. Interpreting § 1231.8(A)(2)(a) as the majority does eviscerates § 5628(A).
Also, the Louisiana Supreme Court previously held that La. C.C.P. art. 1153 could not be applied to Louisiana medical malpractice actions because the "relation back" theory would permit adding parties "subsequent to the expiration of the three-year period provided for in La. R.S. 9:5628, and would read out of the statute the prescription and suspension period provisions by La. R.S. 9:5628 and La. R.S. 40:1299.47." Warren v. Louisiana Med. Mut. Ins. Co. , 07-0492, p. 4 (La. 12/2/08), 21 So.3d 186, 207-08, on reh'g (06/26/09). The Court also stated that permitting La. C.C.P. art. 1153 to apply could " 'potentially subject a health care provider to an indefinite period of prescription, ... a result clearly at odds with the purpose of the [Act].' " Id., 07-0492, p. 4, 21 So.3d at 207, quoting Borel , 07-0419, p. 27, 989 So.2d at 68, n. 12. The same occurs here with the majority's interpretation of § 1231.8(A)(2)(a).
Further, this Court has already addressed an attempt to circumvent the three-year prescriptive period contained in § 5628(A). In Santiago v. Tulane Univ. Hosp. & Clinic , 12-1095, p. 6 (La. App. 4 Cir. 4/24/13), 115 So.3d 675, 680, this Court examined a matter wherein the medical malpractice plaintiff filed a supplemental PCF complaint after the initial MRP decision was rendered. The plaintiff raised claims that she attempted to raise in a second supplemental and amending petition at the trial court level. Id. The plaintiff's supplemental PCF complaint and second amended petition were filed more than three years after the alleged acts of medical malpractice. Id. , 12-1095, p. 9, 115 So.3d at 681. As a result, this Court found that "[b]ecause no PCF complaint was filed against these doctors within three years, prescription has now tolled." Id. , 12-1095, p. 20, 115 So.3d at 688.
Given the above, my interpretation gives meaning to the specific words chosen by the Legislature and does not interfere with the medical malpractice prescriptive periods as contained in § 5628(A). La. R.S. 40:1231.8(A)(2)(a) suspends prescription as to joint and solidary obligors as it relates to the filing of the lawsuit after the MRP renders a decision. It does not serve to extend the three-year limitations of § 5628.
Lastly, the majority also distinguishes Borel v. Young , 07-0419 (La. 11/27/07), 989 So.2d 42, on reh'g (07/01/08), and finds that Ms. Benoit's amended claim is not prescribed. I find that the facts and principles elucidated in Borel are indistinguishable. In Borel , the plaintiffs attempted to amend their petition to include additional doctors and their insurer, but the trial court denied the request. 07-0419, p. 3, 989 So.2d at 55. The plaintiffs then filed a separate suit against those defendants, which was consolidated with the pending suit. Id. One of the newly added doctors filed an exception of prescription, as the lawsuit was filed more than three years from the date of the alleged malpractice and three years from the filing of the initial suit. Id. Plaintiffs contended that the second suit was timely because the initial suit interrupted *56 prescription because the defendants were joint tortfeasors. Id. , 07-0419, p. 23, 989 So.2d at 65. The Louisiana Supreme Court found that the claims against the defendants in the second suit were prescribed even though the defendants were joint and solidary obligors. Id. , 07-0419, p. 28, 989 So.2d at 69. The Court held that "the more specific provisions of the Medical Malpractice Act regarding suspension of prescription against joint tortfeasors apply to the exclusion of the general code article on interruption of prescription against joint tortfeasors." 07-0419, p. 29, 989 So.2d at 69.
Although Borel dealt with an amended petition and a second lawsuit, the legal principles remain applicable here. The initial malpractice complaint here is likened to the initial Borel suit, whereas the amended malpractice complaint here is likened to the second suit in Borel .
Accordingly, I would convert the appeal to an application for supervisory review and deny the writ.

La. R.S. 40:1231.8 was formerly cited as La. R.S. 40:1299.47.

The original MRP complaint named Keisha Benoit and Murray Benoit-the parents of the minor, Mariah Benoit-as claimants. However, this opinion references only Ms. Benoit as plaintiff herein, as Appellant's brief names only Ms. Benoit as the plaintiff/appellant.

The matter was captioned "In Re Medical Panel of Mariah Benoit."

The amended complaint also named Paragon Contracting Services, Inc., Latricia Johnson, LPN, and Cymone Broussard, R.N. as additional defendants.

Ms. Benoit's amended MRP complaint reads as follows:
On November 27, 2013, Mariah Benoit attended the ER at Iberia Medical Center. Based on information and belief, Dr. Leslie K. Greco was the treating physician. Based on information and belief, she had a cast placed on her left leg by Nikki Clary, PA with the assistance of Latricia Johnson, LPN, and [sic] Cymone Broussard, R.N.
Based on information and belief, Dr. Leslie K. Greco and Nikki Clary, PA were employed by Paragon Contracting Services, Inc. at the time of the incident. Latricia Johnson, LPN and Cymone Broussard, RN were employed by Iberia Medical Center.
Based on information and belief, the application of the splint/cast was too tight on the left leg resulting in formation of a pressure ulcer over the left heel. There was also a failure to educated [sic] the parents about the signs to look out for in a non-verbal child such as (1) excessive crying which may be due to the cast being too tight, (2) burning or stinging caused by too much pressure on the skin, or (3) painful pressure areas or rubbing beneath the cast or (4) pressure sores caused by an incorrectly fitting cast.

2007-0419 (La. 11/27/07), 989 So.2d 42, on reh'g , (7/1/08), 989 So.2d 53-82. A more in depth analysis of Borel is discussed infra.

La. C.C.P. art. 2201 states: "Supervisory writs may be applied for and granted in accordance with the constitution and rules of the supreme court and other courts exercising appellate jurisdiction."

The lawsuits were ultimately consolidated by motion of the district court.

In its initial review, the Borel Court found that La. R.S. 9:5628 established a preemptive time period. 2007-0419, p. 13, 989 So.2d at 51.

The Borel plaintiffs had 282 days or until January 29, 2003 to bring the physician into the lawsuit. 2007-0419, p. 28, 989 So.2d at 69.

§ 5628(A) is also subject to the application of contra non valentum .